Irwin **FIELD**, Plaintiff-Appellant,

v.

Honorable John S. **BOYLE**, Chief Judge
of the Circuit Court of Cook County,
Illinois, Defendant-Appellee.

No. 73–1056.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 3, 1973.

Decided Oct. 4, 1974.

Rehearing and Rehearing En Banc
Denied Oct. 31, 1974.

Sheldon Engel, Chicago, Ill., for plaintiff-appellant.

Bernard Carey, State's Atty., and Fredric B. Weinstein, Asst. State's Atty., Chicago, Ill., for defendant-appellee.

Before CUMMINGS, PELL and STEVENS, Circuit Judges.

PELL, Circuit Judge.

On July 1, 1971, in accordance with the new Constitution of the State of Illinois which became effective on that date, the office of magistrate ceased to exist. On that date, persons then serving as magistrates were elevated "automatically" to the position of Associate Judge for a four-year term. At a meeting of the judges of the Circuit Court of Cook County, Illinois, in June 1971, a majority of the judges casting ballots had voted to remove plaintiff Irwin Field from his position as magistrate, effective June 30th. They had before them the recommendation of a judicial committee assigned the responsibility of evaluating the qualifications of the circuit's magistrates. The circuit judges had acted on the basis of a directive of the Supreme Court of Illinois, which was concerned that magistrates unsuited to be judges might assume that role on July 1st. Because Field was terminated, he was not eligible for the July 1st promotion.[1]

In an action filed December 1, 1972, based upon 42 U.S.C. § 1983, former magistrate Field alleged that the judges of the Circuit Court of Cook County had violated his rights under the Fourteenth Amendment. The complaint contended, *inter alia*, that (1) the judges, in effectuating plaintiff's removal, had failed to grant him a "fair hearing," notice of a hearing, a statement of reasons why he should not be retained, an adequate opportunity to respond to "attacks on his reputation," and an opportunity to confront his detractors; and (2) the judges' vote which found Field unqualified to become an Associate Judge and which terminated his appointment as magistrate was void because the majority who had voted against Field did not equal a majority of the total number of circuit judges in Cook County. Field sought a preliminary injunction and a permanent injunction restraining the judges from filling all the vacancies for Associate Judge and an order directing the judges to reinstate Field to the judiciary and award him back pay. Plaintiff also sought a declaration that his removal had violated the due process clause of the Fourteenth Amendment.

After denying Field's motion for a preliminary injunction and dismissing as to all the defendants except Chief Judge Boyle,[2] the district court on Sep-

---

1. The transition schedule appended to the body of the new Illinois Constitution stated in part: "On the effective date of this Constitution, Associate Judges and magistrates shall become Circuit Judges and Associate Judges, respectively, of their Circuit Courts. . . . Notwithstanding the provisions of Section 11 of Article VI, magistrates in office on the effective date thereof are eligible to serve as Associate Judges."

To effectuate this change in the judiciary, the Illinois Supreme Court instructed the chief judges of the various circuits of certain steps they should take. The director of the Administrative Office of the Illinois Courts, writing on behalf of the State's Su-

preme Court, sent Chief Judge Boyle a letter, the text of which is appended to this opinion as an addendum.

The 1870 Constitution conferred upon the Supreme Court of Illinois general administrative authority over all Illinois courts. Section 2, Article VI.

2. The district court dismissed as to the other judges of the circuit as defendants apparently because they had not been served individually. In a motion to dismiss they had contended that "Judges of the Circuit Court of Cook County, Illinois, as an administrative entity," was not a legal, sueable group. That motion also suggested that all the

tember 5, 1972, issued a memorandum opinion in which it stated that Field had not been given a "due process hearing." However, the court concluded that there was a dispute as to whether Field had waived his right to such a hearing and the court therefore ordered a hearing on this waiver issue. In the same memorandum opinion, the court also announced that it would abstain from deciding whether the defendant had violated Illinois law by acting on a vote cast by fewer than a majority of all the circuit's judges.

At the conclusion of the hearing ordered, the court found that Field had waived his right to a due process hearing. The court subsequently entered summary judgment for defendant Boyle.[3] Field appeals.

### I

Field first sat as a magistrate in January 1966 and thereafter was reappointed annually to that position by the judges of the Circuit Court of Cook County. Section 12, Article VI of the "old" (1870) Illinois Constitution had authorized the judges of each circuit to appoint, "[s]ubject to law," magistrates

"at their pleasure." Local rule 0.8 of the Circuit Court of Cook County provided that

"... The Circuit Judges ... shall appoint Magistrates to serve at their pleasure. ... Magistrates shall be appointed for a term of one year commencing the first day of January each year and may be reappointed for like terms during good behavior. ..."

Field asserts that he, as a public employee, had a right prior to his dismissal to a hearing that satisfied the Fourteenth Amendment's due process requirements. Whether plaintiff was entitled to procedural due process protection depends upon whether he meets the criteria set out in Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Supreme Court decisions most closely on point. *Roth-Sindermann* concerned the procedural rights of public school teachers whom their boards had decided not to rehire.[4] Field maintains that he doubly qualified under those cases: First,

judges must be dismissed from the § 1983 action—which sought injunctive as well as monetary relief—on the basis of judicial immunity. The question of judicial immunity is one which we need not answer in order to decide this appeal. We do note, however, that the present case does not even fit within that category of situations we deemed exceptional in Littleton v. Berbling, 468 F.2d 389 (7th Cir. 1972), reversed, O'Shea v. Littleton, 414 U.S. 812, 94 S.Ct. 34, 38 L.Ed.2d 47 (1974). *See* Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *cf.* City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); Barr v. Matteo, 360 U.S. 564, 569–570, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); Hampton v. City of Chicago, 484 F.2d 602, 607–608 (7th Cir. 1973), cert. denied, 415 U.S. 917, 94 S. Ct. 1413, 39 L.Ed.2d 471 (1974).

3. Field had moved for final judgment as to certain counts which had not, in his opinion, had final judgment disposition. In response to this motion, the district court had entered "summary judgment for defendant John S. Boyle, and against plaintiff as to all counts on the Complaint." Since this action fol-

lowed an evidentiary hearing as to certain of the issues in which apparently issues of fact were in part, at least, determined on a credibility basis it would appear that reference to summary judgment was inappropriate. We accordingly will disregard the nomenclature and treat the case as having been disposed of by final judgment on the issues created. We also note that although the district court purported to abstain as to the "majority" issue, the court did not retain jurisdiction. The plaintiff deemed that the counts containing this issue had been dismissed.

4. The Supreme Court in those decisions held that the Fourteenth Amendment does not require that a nontenured teacher at a state college be given notice and a hearing prior to the nonrenewal of his contract unless the teacher could show that the nonrenewal deprived him of an interest in "liberty" or that, despite the absence of formal tenure, he had a "property" interest in continued employment. Whether a teacher had a property interest was to be determined by reference to state law.

he had a legitimate claim of entitlement to be in office beyond the date he was dismissed, that is, he had a "property interest" in the position of magistrates or an "expectancy of employment" under state law (court rule 0.8), at least until his 1971 one-year term was completed; second, the judicial committee's determination that Field was unqualified to be an associate judge was an attack on his integrity and therefore should have triggered a "due process hearing" at which plaintiff would have the opportunity to clear his name.[5]

Judge McGarr in his memorandum opinion of September 5, 1972, concluded that the termination of Field as magistrate did not amount to a deprivation of Field's "liberty." The circuit's judges, the court said, had not stated the reasons for their unfavorable evaluation of plaintiff's qualifications. However, relying on the fact that Field had been dismissed midway through his appointment under local rule 0.8, Judge McGarr held that the termination was a deprivation of a property interest, stating "[t]ermination at that point in time required a due process hearing."

■ We disagree that Field had a property interest or expectancy of employment which could not—consonant with the federal Constitution—be divested without Field first being afforded some kind of due process hearing. Plaintiff's most recent appointment was effective January 1971. The specially convened constitutional convention adopted on September 3, 1970, the new Illinois Constitution, which contained no provision for the office of magistrate. On December 15, 1970, a majority of

those citizens voting ratified the proposed Constitution.

Under the prior Constitution, the magistrates were to be appointed by the circuit judges "at their pleasure." Ordinarily, this phrase would connote to us that the appointment being at the pleasure of the appointing officials was by implicit terms not viable beyond the term during which the pleasure continued to be viable. Here the pleasure ceased to exist as of June 30, 1971. If we should assume *arguendo* that notwithstanding lack of constitutional limitation on removal power, the circuit judges of a particular circuit could legally postpone their power of removal to the end of each year when the lack of pleasure would be reflected in the failure to reappoint, we still would find no basis for saying that the power to appoint for a one year term continued to exist on January 1, 1971 after the new Constitution had been formally adopted. While the transition schedule recognized that the position of magistrate would continue to exist for a limited purpose, that existence continued only until the effective date of the new Constitution which was one half a year away. We therefore are unable to conceive that the judges could freeze an appointee into a definite term in a position which had no life for that full term. Of necessity, the 1971 appointment had to be at pleasure. There is no indication in the record that rule 0.8 was revised to provide for a six month term of office.

We find no law or decision that mandates the conclusion that Field had a property interest in a six-month term or that the Supreme Court of Illinois and

---

5. In his brief, Field conflates two situations that the Supreme Court in *Roth* suggested might arise when a public employee is dismissed or not retained: (1) where the person's good name, reputation, honor, or integrity is at stake; (2) where the State imposes "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." 408 U.S. at 573, 92 S.Ct. at 2707. These situations involve two distinct liberty interests. See the discussion in Adams v. Walker, 492 F.2d 1003, 1008 (7th Cir. 1974). The Court in *Roth* explained that proof that "nonretention in one job, taken alone, might make [the nonretained teacher] somewhat less attractive to some other employers would hardly establish the kind of foreclosure of opportunities amounting to a deprivation of 'liberty.'" 408 U.S. at 574 n.13, 92 S.Ct. at 2708.

the judges of the Circuit Court of Cook County acting at its directive lacked the power to screen and dismiss magistrates prior to July 1, 1971. Neither the old Constitution nor the local rule provided that magistrates could be terminated only for specified reasons after a due process hearing. Magistrates served "at [the] pleasure" of the judges. *Cf.* Adams v. Walker, 492 F.2d 1003, 1006–1007 (7th Cir. 1974).

However, because of the nature of the charges on which Field's dismissal was based, including a low evaluation of his integrity, we will assume *arguendo* that plaintiff's liberty interest was sufficiently implicated so as to activate the due process clause. In *Roth,* 408 U.S. at 573, 92 S.Ct. at 2707, the Court, in dictum, stated that where the State, in declining to rehire a teacher, makes a charge against him that might seriously damage his standing and associations in his community, "due process would accord an opportunity to refute the charge before University officials." The footnote to this passage explains that "[t]he purpose of such notice and hearing is to provide the person an opportunity to clear his name. Once a person has cleared his name at a hearing, his employer, of course, may remain free to deny him future employment for other reasons."

At a meeting with the circuit's committee on magistrates on May 6, 1971, Field was told that he had received a zero in every category in which his qualifications for associate judge were evaluated. The magistrates were rated in the following area: integrity, judicial temperament, attendance, knowledge of the law, interest in the Court system and cooperation. At least two judges present at the meeting reported that Field was asked if he had anything to say in response to the low evaluations. He either "shrugged his shoulders" or "had sort of a sheepish smile." The district court found that Field knew the judges' concerns about him in "sufficient detail so that he knew why he was being called before the Committee and what aspects of his judicial characteristics in question he was being called upon to defend." According to two of the judges who attended the May 6th meeting, plaintiff was also told that he could be represented by a lawyer and could request a further hearing, in the presence of a court reporter, before the committee or the entire judiciary. One judge mentioned the possibility of Field's confronting those who had registered complaints against him. The chairman of the committee testified that Field replied, "I am here now, I will answer questions. I don't care about any hearing, formal hearing."

■ On the basis of this evidence, Judge McGarr found that Field had been offered the opportunity to have another, fuller hearing regarding his qualifications for the office of associate judge and that Field had failed to accept the offer. Field argues at length as to the incorrectness of this finding of the district court, however, in essence this is an attack on the credibility of the witness on whose testimony the finding was primarily based. The district court's credibility determination being amply supported by the record we decline to say that it was incorrect. Accordingly, we accept the determination that Field waived any further rights to a hearing that he might have had.

Our recent decision in Suckle v. Madison General Hospital, 499 F.2d 1364 (1974), a section 1983 action by a surgeon seeking reinstatement to the staff of a hospital, is pertinent here. We held:

"Plaintiff has no federal right to be on the staff of Madison General Hospital. The only federal right he claims is the right to a due process hearing before denial of reappointment. . . . In our view the medical staff hearing offered on January 7th was neither explicitly nor obviously insufficient. Plaintiff was not entitled to reject it out of hand merely because it might turn out to be inadequate. Judicial relief is not warranted where a plaintiff rejects a seem-

ingly adequate hearing without inquiring about procedural details that he considers crucial." 499 F.2d at 1367.·

## II

Field also contends that his dismissal was void because it was effected by fewer than a majority of all the sitting judges of the Circuit Court of Cook County. He relies on Section 12, Article VI of the 1870 Illinois Constitution, quoted above, and on the following language of local rule 0.8: "Whenever a vacancy occurs in the office of Magistrate, a majority of the Circuit Judges may appoint a Magistrate to fill the unexpired term." Field reads these provisions as requiring the concurrence of a majority of *all* the circuit's judges. From this he argues that the power of removal is an incident of the power of appointment and that, therefore, "the . . . entity and its quantum which has the power to fill vacancies accordingly is the same being and sole quantum necessary to remove." Interestingly, he did not equate a power to remove "at pleasure" with the power to appoint "at pleasure."

On June 21, 1971, the date of voting on magistrates' qualifications, the Circuit Court of Cook County included 71 judges. Thus, under plaintiff's theory, although a majority of those judges participating—35 of 65—voted to remove plaintiff from office, their effort failed by one vote.

■ Upon analysis, the majority vote issue seems to break down into two sub-issues: the proper construction of rule 0.8 and of the state constitutional provision, matters of Illinois law; and the legality, under the federal Constitution, of dismissing a magistrate by a vote of less than a majority of all those eligible to vote.[6]

Most of Field's arguments about the proper construction of the state provisions center on policy reasons for not applying the usual and concededly well-established rule that "majority" means one more than half of those voting on a particular question. Without authorization or proof, Field asserts that his interpretation of the pertinent law was the interpretation that the promulgators intended. Their aim supposedly was to "retard Political reprisals for unpopular but judicially worthy decisions." In the absence of a record supporting such an inference, we may not act as a policy-making body and read in such a restriction.

■ Not only are we not persuaded that the provisions relied upon by Field require an absolute majority, but plaintiff cites no solid Illinois authority that the provisions, which on their face pertain only on the appointment of magistrates, necessarily apply to the removal of persons from the office of magistrate.

Shortly after the June 21st meeting of the circuit's judges, the Supreme Court of Illinois denied Field's emergency application for a writ of mandamus, in which Field had sought reinstatement on the ground of the supposedly insufficient vote. Although the court issued no opinion and may have refused to grant the writ because it concluded that mandamus was an inappropriate remedy, we do give the denial some weight as an intimation, at the least, of how the highest court of the state regards plaintiff's claim. We also find significant the fact that the Cook County Circuit Court judges took action in reliance on the

---

**6.** The district court, as we have noted, abstained from reaching this issue on the basis that it did not rise to the dignity of a federally cognizable civil right. To the extent that this would be a matter of pendent jurisdiction, United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), would ,indicate that the district court need not have undertaken to decide this issue. However, we are not unmindful that due process questions under the federal Constitution may be presented either by the failure of a state to follow its own rules of law or by state rules of law themselves serving as a deprivation of due process. *Cf.*, Flood v. Margis, 461 F.2d 253 (7th Cir. 1972).

evaluation of Field by 65 of the Circuit's 71 judges. The dismissal reveals the judges' interpretation of their own rule.

 We find Field's challenge on federal constitutional grounds unconvincing. The decision whether to base a decision on a majority of those present or voting or on an absolute majority of all those eligible to vote seems to us to reflect policy considerations which the due process clause does not foreclose the States from evaluating as they think best. Many "important" issues are decided by a majority or other number of those voting or present at the voting. *Cf.* U. S. Constitution, art. I, sections 2, clause 5, 3, clause 6, and 5, clause 1 (impeachment and conviction upon impeachment). In short, we find no merit to the argument that the vote to oust Field violated the due process clause of the Fourteenth Amendment. Approximately 92 percent of the circuit's judges eligible to vote on plaintiff's qualifications did so.

We have considered the other contentions raised in this appeal and find them without merit. Accordingly, we affirm the judgment for defendant Boyle on all counts.

Affirmed.

## ADDENDUM

The Supreme Court during its March Term considered the matter of the importance of re-appraising the qualifications of present magistrates in the State of Illinois prior to the effective date of the new Constitution.

The Court believes that it is extremely important that the present magistrates be screened before that date to avoid freezing in office as associate judges those who are not qualified to hold that office. Unless such a screening takes place before July 1, 1971, it is likely that Section 10 of Article VI and Section 4 of the transition schedule will together be interpreted to mean that all magistrates in office on that date are frozen in as associate judges for a four-year term.

The Supreme Court is accordingly directing that prior to July 1, 1971, the Chief Judge and the Circuit Judges of each circuit shall re-appraise the qualifications of their present magistrates and shall terminate, prior to July 1, 1971, the employment of any of the present magistrates whom they feel are not qualified to hold office as associate judges for a four-year term commencing July 1.

A report of this re-appraisal should be made to the Administrative Office prior to June 15, 1971, and should include a list of those magistrates who the circuit judges desire to retain as associate judges for a four-year term commencing July 1. It should also include the names and date of termination of employment of those magistrates who are not to become associate judges.