William R. BOLLOW, Plaintiff-Appellant,

v.

FEDERAL RESERVE BANK OF SAN FRANCISCO, Board of Governors of the Federal Reserve System, Louis E. Reilly, Does I through XX, Inclusive, Defendants-Appellees.

CA No. 79–4414.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 1981.

Decided July 13, 1981.

As Modified on Denial of Rehearing and Rehearing En Banc Oct. 9, 1981.

---

William R. Bollow, pro se.

Donald D. Connors, Jr., George C. Stoll, San Francisco, Cal., argued for defendants-appellees; James L. Meeder, Brobeck, Phleger & Harrison, George C. Stoll, San Francisco, Cal., on brief.

Before TRASK and KENNEDY, Circuit Judges, and BONSAL,* District Judge.

TRASK, Circuit Judge:

Appellant Bollow was terminated by the Federal Reserve Bank of San Francisco (the Bank) after eleven years of employment as a regulatory attorney specializing in the Bank Holding Company Act. Bollow alleges breach of contract, constitutional, and tort claims against the Bank and several of its officers. He also alleges that he was fired because he uncovered allegedly illegal regulatory activity on the part of the Bank and the Federal Reserve Board (the Board). The Bank contends that it had authority to dismiss Bollow by virtue of 12 U.S.C. § 341, Fifth. The district judge granted summary judgment in favor of all defendants. We affirm.

I

On October 28, 1975, Bollow was involved in an altercation with a Bank secretary, during which he allegedly shouted profanities and used abusive language. This incident was observed by Bollow's immediate superior, Reilly, Vice-President and General Counsel to the Bank, who determined that it justified Bollow's immediate dismissal. Accordingly, on the following day Reilly requested that Bollow resign because of his inability to get along with other Bank employees, as evidenced by the alleged shouting altercation and other similar incidents involving Bollow. When Bollow refused to resign, Reilly informed him that he was to be terminated immediately.

On October 30, Bollow met with the Senior Vice-President of the Bank, Sims, to discuss his termination. Sims declined to overrule Reilly's decision to dismiss Bollow, although he did postpone Bollow's dismissal for two weeks. Bollow stopped working at the Bank in early November following an exit interview with the Bank's Personnel Officer, Murray.

On November 25, pursuant to a suggestion by Sims, Bollow submitted a written appeal to the Bank President, Balles. At about this time, the Bank Ombudsman, Langhorne, commenced an independent review of the circumstances of Bollow's termination. On December 15, Langhorne informed Balles that she found the termination to have been "implemented fairly and within the established personnel policy of the Bank." On January 13, 1976, Bollow was told in a meeting with Balles and Murray that the decision to terminate him was final.

Bollow then filed suit in the district court against Reilly, the Bank, the Board, and twenty Doe defendants. He alleged various breach of contract and tort claims, as well as violations of his constitutional due process rights. The court granted summary judgment in favor of the Board on the ground that it was actually and legally uninvolved in Bollow's termination. It rendered summary judgment in favor of Reilly and the Bank on the grounds that the termination of Bollow without a hearing violated none of his statutory or contractual rights and implicated no constitutionally protected property or liberty interest. Appeal was

* Honorable Dudley B. Bonsal, Senior United States District Judge for the Southern District of New York, sitting by designation.

properly taken from these judgments, and this court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II

The statutory provision that governs dismissal of Federal Reserve Bank employees is section Four, Fifth of the Federal Reserve Act of 1913 (the Act):

[A] Federal reserve bank ... shall have power—

. . . . .

Fifth. To appoint by its board of directors a president, vice presidents, and such officers and employees as are not otherwise provided for in this Act, to define their duties, require bonds for them and fix the penalty thereof, *and to dismiss at pleasure* such officers and employees.

12 U.S.C. § 341, Fifth (emphasis added).

Bollow contends that the dismissal "at pleasure" language of this statute refers only to the power of reserve banks to terminate an officer or employee without consulting the Board, and that the process rights of reserve bank employees must be determined by reference to state law.[1] Bollow asserts that under California law he was considered an "at-will" employeee entitled to a hearing before being terminated.[2]

The only reported opinion construing section Four, Fifth is *Armano v. Federal Re-* *serve Bank of Boston,* 468 F.Supp. 674 (D.Mass.1979). In *Armano,* the plaintiff alleged that the bank had breached its employment contract with him by terminating him without just cause. *Id.* at 675. The court found that reserve banks are strictly limited to the powers expressly granted them by the Act, and that "a contract that binds the Bank by requiring just cause for dismissal prevents the Bank from exercising its express power [under section Four, Fifth] to dismiss an employee at pleasure." *Id.* at 676. Accordingly, the court held the contract void and unenforceable because the bank lacked authority to enter into it. *Id.*[3] Thus, the court read section Four, Fifth as limiting the powers of reserve banks as well as restricting the rights of employees: No process rights are conferred on reserve bank employees by section Four, Fifth, and efforts to confer such rights—as, for example, by contract—are void as violative of the statute.

Language from two other cases not cited by the *Armano* court lends analogous support to its construction of section Four, Fifth. In construing a statute which provides that Air Force reserve officers may be discharged "at the pleasure" of the President, the Fifth Circuit in *Sims v. Fox,* 505 F.2d 857 (5th Cir. 1974) (en banc), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975) stated the following:

---

1. Bollow marshals little support for this position. The statutory authorities cited by him are unpersuasive and largely irrelevant. Section Four, Fourth, 12 U.S.C. § 341, Fourth, merely provides that reserve banks may sue and be sued in state courts. Sections 11(f) and (j), 12 U.S.C. § 248(f) & (j), provide only that the Board may remove any reserve bank officer or director, and that it has supervisory power over such banks. Bollow's reliance on *American Bank & Trust Co. v. Federal Bank* is likewise unavailing. That case merely outlawed an anti-competitive practice of reserve banks. Finally, that the Bank failed to argue below the inapplicability of state law is immaterial; in articulating the law, the district courts are not limited by what is argued to them by the parties.

2. California law also requires that the employer act in good faith in terminating such an em-

ployee, and that the termination be consistent with public policy.

3. As authority for its holding, the court relied on two state court decisions which reached the same result in construing section 24, Fifth of the National Bank Act, 12 U.S.C. § 24, Fifth. See *Kozlowsky v. Westminster Nat'l Bank,* 6 Cal. App.3d 593, 596–97, 86 Cal.Rptr. 52, 53–54 (1970) (citing *In re Paramount Publix Corp.,* 90 F.2d 441, 443 (2d Cir. 1937)); *Copeland v. Melrose Nat'l Bank,* 229 A.D. 311, 241 N.Y.S. 429, 430, *aff'd,* 254 N.Y. 632, 173 N.E. 898 (1930). Section 24, Fifth of the National Bank Act is virtually identical to section Four, Fifth of the Act. The *Armano* court also relied on a policy of allowing unfettered personnel discretion to reserve banks so that they might efficiently discharge their financial responsibilities. 468 F.Supp. at 676.

Neither has [the officer] pointed to any express terms in his contract or to any governmental regulation that might have led him to believe he had . . . a right [to remain in the Air Force]. An Air Force contract or regulation cannot grant that which Congress has specifically withheld. The Air Force must act within the authority delegated to it by Congress or, in certain cases, by the President. Any "regulations" or "contracts" attempted in excess of that authority would be void.

*Id.* at 862 (dicta). In *Ventetuolo v. Burke,* 470 F.Supp. 887 (D.R.I.1978), *aff'd,* 596 F.2d 476, 481–82 (1st Cir. 1979), the plaintiff was given explicit assurances by his supervisor that he could retain his job as long as funding for it were available, despite the fact that the governing statute provided that the plaintiff served "at the pleasure" of the commissioner. 470 F.Supp. at 891–92. The court held:

These discussions do not establish a legal entitlement to continued employment binding on the Commissioner. [The supervisor] lacked both actual and apparent authority to promise employment for an indefinite period of time, conditioned only on the availability of federal funds. Such a promise . . . would abrogate the commissioner's statutory authority to terminate at will.

*Id.* at 892.

■ Based on the foregoing authorities, we conclude that no process or tenure rights are conferred on reserve bank employees by section Four, Fifth. *See also Field v. Boyle,* 503 F.2d 774, 777–78 (7th Cir.1974). We further conclude, based on the same authorities, that attempts to create such rights by reference to independent sources are violative of the statute and void thereunder. Assuming that Bollow would indeed have been entitled to certain process rights under California law, such law when applied to reserve bank employees conflicts with section Four, Fifth. In such circumstances, the federal statute must control. U.S.Const., Art. VI, cl. 2. Accordingly, we hold that the district court did not err in refusing to apply California law to Bollow's termination.

■ Bollow also argues that, notwithstanding section Four, Fifth, the Bank was required to comply with its published personnel manual, and that it failed to do so. The district judge found that the Bank substantially complied with the manual procedures for discharging employees for misconduct. This finding is adequately supported by the record. Thus, even if we assume that the Bank's authority to discharge employees pursuant to section Four, Fifth is somehow limited by the personnel manual, we find that the Bank has complied with the requirements of the manual.

### III

Bollow next contends that his termination by the Bank deprived him of due process of law in violation of the fifth amendment. To invoke the process guarantees of the Constitution, however, Bollow must first show that the Bank deprived him of a property or a liberty interest.

### A

■ To have a property interest in a governmental benefit, including employment, an individual must have an entitlement to the benefit. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Such entitlements are created by "rules or understandings" that stem from an independent source, such as relevant statutes, regulations, and ordinances, or express or implied contracts. *Id; Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Bollow identifies three possible sources for his entitlement to continued employment at the Bank:

1. "Custom, practice, and policy"— Bollow asserts that he was the only employee over forty years of age with more than ten years on the job ever to have been fired by the Bank for such a "flimsy" reason.

2. A written assurance from the Bank president that he would not be dismissed so long as his work was satisfactory.

3. Federal age-discrimination laws.

1

We approach Bollow's asserted "custom, practice, and policy" with caution. It is always possible to restrictively define a class so that it includes only a desired person. The class identified by Bollow is really a subclass consisting of the intersections of several larger employee classes—those over forty, those with more than ten years experience, and those allegedly discharged for "flimsy" reasons. It might well be that the Bank has dismissed numerous employees over 40 with less than 10 years, or under 40 with 10 or more years, for reasons similar to those given for Bollow's dismissal.

█ With this in mind, we find that this alleged source is insufficient to create an entitlement. Longevity alone does not create a property interest. *Perry v. Sindermann, supra,* 408 U.S. at 601–02, 92 S.Ct. at 2699–700; *McElearney v. University of Illinois,* 612 F.2d 285, 290–91 (7th Cir. 1979); *McNeill v. Butz,* 480 F.2d 314, 320 (4th Cir. 1973). An entitlement may spring from an understanding, but the understanding must be "mutually explicit." *Board of Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709. In this instance, such an understanding cannot be had solely from the Bank's prior failure to terminate someone like Bollow; there must have been at least some sort of affirmative conduct on the part of the Bank. *Cf. Perry v. Sindermann, supra,* 408 U.S. at 599–600, 92 S.Ct. at 2698–

2699 (understanding created by provision in official publication of defendant). *See also Board of Regents v. Roth, supra.*[4]

2

Bollow also relies on an assurance of continued employment communicated to him in a letter from Balles, the Bank president. Essentially, Balles promised Bollow that he would not be terminated by the Bank so long as his work was satisfactory.[5]

█ By promising Bollow employment security in excess of that provided for by section Four, Fifth, Balles clearly overstepped the bounds of his authority under that section. *See* Part II *supra.* Thus, any contract which might have been created pursuant to the assurance is void and unenforceable against the Bank. *Sims v. Fox, supra,* 505 F.2d at 862 (dictum); *Armano v. Federal Reserve Bank of Boston, supra,* 468 F.Supp. at 676 & n.3. "[T]he United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to do what the law does not sanction or permit." *Utah Power and Light Co. v. United States,* 243 U.S. 389, 409, 37 S.Ct. 387, 391, 61 L.Ed. 791 (1917); *accord Dorl v. Commissioner,* 507 F.2d 406 (2d Cir. 1974); *United States v. Crance,* 341 F.2d 161, 166 (8th Cir. 1965). A void contract is clearly insufficient to support a claim of entitlement to government employment. There being no independent source to support Bollow's claim of entitlement, *see generally Board of*

4. "To be sure, respondent does suggest that most teachers hired on a year-to-year basis by [the college] are, in fact, rehired. But the District Court has not found that there is anything approaching a "common law" of re-employment so strong as to require University officials to give the respondent a statement of reasons and a hearing on their decision not to rehire him." 408 U.S. at 578 n.16, 92 S.Ct. at 2709 n.16.

5. The letter states in relevant part:

I am aware that the Bank's Productivity program has created anxiety in the minds of our employees about job security. While some jobs will be eliminated, the great majority of our employees will remain with the Bank.

To completely remove any concern you may have about your personal situation, you have my assurance that with continued satisfactory job performance, your future with the Bank is secure; no matter what changes may occur in our operating procedures, you will continue to have a job with the Bank. Moreover, even if the nature of your job should change, there will be no reduction in your present pay, and you would continue to be eligible for advancement.

Your efforts to work with me toward achievement of the Bank's goals are appreciated, and I look forward to our continued association.

*Regents v. Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709, we conclude that a constitutionally protected property interest cannot have been created by the assurance.[6]

That Bollow may reasonably have thought that Balles had authority to give a valid assurance of continued employment does not affect our conclusion that a protected interest was not created. All persons in the United States are chargeable with knowledge of the Statutes-at-Large. *Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947); *Lavin v. Marsh,* 644 F.2d 1378, 1383 (9th Cir. 1981). This alone is sufficient for us to assume that Bollow knew that any property interest which might otherwise have been created by the assurance was negated by section Four, Fifth. In addition, however, it is well established that anyone who deals with the government assumes the risk that the agent acting in the government's behalf has exceeded the bounds of his authority. *E. g., Federal Crop Insurance Corp. v. Merrill, supra,* 332 U.S. at 384, 68 S.Ct. at 3; *Lavin v. Marsh, supra,* at 1383; *Gray v. Johnson,* 395 F.2d 533, 537 (10th Cir.), *cert. denied,* 392 U.S. 906, 88 S.Ct. 2056, 20 L.Ed.2d 1364 (1968). Thus, Bollow has no right to relief from negative consequences flowing from his possible reliance

on an assurance that Balles was not authorized to make. Accordingly, even absent a presumption that Bollow knew about section Four, Fifth, we still may properly conclude that the assurance did not confer on Bollow an entitlement to continued employment at the Bank.[7]

### 3

▮▮▮ Bollow's assertion that federal age discrimination laws created a constitutionally protected property interest in his favor is frivolous. The mere existence of age-discrimination statutes does not create job entitlements for government employees over a certain age.

In sum, none of Bollow's asserted sources of entitlement is sufficient to create a constitutionally protected property interest.

### B

▮▮▮ The liberty protected by the due process clause of the fifth and fourteenth amendments encompasses an individual's freedom to work and earn a living. Thus, when the government dismisses an individual for reasons that might seriously damage his standing in the community, he is entitled to notice and a hearing to clear his name. *Board of Regents v. Roth, supra,*

---

**6.** The cases have uniformly held that, without more, one who works "at the pleasure" of another has no constitutionally protected entitlement to continued employment. *See, e. g., Arnett v. Kennedy,* 416 U.S. 134, 181–82, 94 S.Ct. 1633, 1657–58, 40 L.Ed.2d 15 (1974) (White, J., concurring and dissenting), and cases discussed therein; *Bishop v. Wood,* 426 U.S. 341, 345, 347, 96 S.Ct. 2074, 2077, 2078, 48 L.Ed.2d 684 (1976); *Mervin v. F.T.C.,* 591 F.2d 821, 828 (D.C. Cir. 1978); *Moore v. Otero,* 557 F.2d 435, 437 (5th Cir. 1977); *Ampleman v. Schlesinger,* 534 F.2d 825, 828 (8th Cir. 1976); *Sims v. Fox, supra,* 505 F.2d at 861–62; *Field v. Boyle, supra,* 503 F.2d at 777–78; *Catterson v. Caso,* 472 F.Supp. 833, 838 (E.D.N.Y.1979); *see Mazalaski v. Treusdell,* 562 F.2d 701, 709 n.23 (D.C. Cir. 1977).

**7.** Admittedly, charging private persons with knowledge of the federal statutes and allocating to them the risk of loss from unauthorized conduct by governmental agents are both highly formal legal rules that do not fairly reflect how people interact with the government. *Cf. Federal Crop Insurance Corp. v. Merrill, supra,* 332 U.S. at 387, 68 S.Ct. at 5 (Jackson, J.,

dissenting) ("[I]t is an absurdity to hold that every farmer who insures his crops knows what the Federal Register contains or even knows that there is such a publication"). The rules are nevertheless necessary to ensure that the will of Congress is not thwarted by misguided government officials:

> [I]t is not a happy occasion when the Government's hands, performing duties in behalf of the public, are tied by the acts and conduct of particular officials in their relations with particular individuals . . . .

> Obviously, Congress's legislative authority should not be readily subordinated to the action of a wayward or unknowledgeable administrative official.

*Lavin v. Marsh, supra,* 646 F.2d at 1383 (quoting *Schuster v. Comm'r,* 312 F.2d 311, 317 (9th Cir. 1962)). *See also Federal Crop Ins. Corp. v. Merrill, supra,* 332 U.S. at 385, 68 S.Ct. at 3 (it is the "duty of all courts to observe the conditions defined by Congress for charging the public treasury").

408 U.S. at 573 & n.12, 92 S.Ct. at 2707 & n.12; *e. g., Goss v. Lopez*, 419 U.S. 565, 575, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975). To implicate constitutional liberty interests, however, the reasons for dismissal must be sufficiently serious to "stigmatize" or otherwise burden the individual so that he is not able to take advantage of other employment opportunities. *Board of Regents v. Roth, supra*, 408 U.S. at 573–74, 92 S.Ct. at 2707–08; *see Wisconsin v. Constantineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971) (charges reflecting on "good name, reputation, honor, and integrity").

This court has described the stigma that infringes liberty interests as that which "*seriously* damages a person's reputation or *significantly* forecloses his freedom to take advantage of other employment opportunities . . . ." *Jablon v. Trustees of California State Colleges*, 482 F.2d 997, 1000 (9th Cir. 1973) (emphasis added), *cert. denied*, 414 U.S. 1163, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974). Subsequent panels have set the boundary of liberty interests at accusations of "moral turpitude," such as dishonesty or immorality—*i. e.*, charges that do not reach this level of severity do not infringe constitutional liberty interests. *See, e. g., Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 365–66 (9th Cir. 1976); *Gray v. Union County Intermediate Education District*, 520 F.2d 803, 806 (9th Cir. 1975). *See also Board of Regents v. Roth, supra*, 408 U.S. at 573, 92 S.Ct. at 2707. Thus, in both *Stretten* and *Gray* it was held that dismissal for reasons of incompetence and inability to "get along" with co-workers did not infringe liberty interests. 537 F.2d at 366; 520 F.2d at 806; *accord Weathers v. West Yuma County School District R–J–1*, 530 F.2d 1335 (10th Cir. 1976).

▌ The Bank's reasons for firing Bollow were never publicly disclosed. Unpublicized accusations do not infringe constitutional liberty interests because, by definition, they cannot harm "good name, reputation, honor, or integrity." *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1975); *accord Davis v. Oregon State University*, 591 F.2d 493, 498 (9th Cir. 1979) (on petition for rehearing); *Haimowitz v. University of Nevada*, 579 F.2d 526, 529 (9th Cir. 1978). For this reason alone Bollow's liberty claim must fail. When reasons are not given, inferences drawn from dismissal alone are simply insufficient to implicate liberty interests. *See Board of Regents v. Roth, supra*, 408 U.S. at 574, 92 S.Ct. at 2707; *Haimowitz v. University of Nevada, supra*, 579 F.2d at 529; *Davis v. Oregon State University, supra*, 591 F.2d at 498. Moreover, even if the reasons had been publicly disclosed, they are no more than the "inability to get along" charges that were held insufficient in *Stretten* and *Gray*.

As a final argument, Bollow characterizes himself as a regulatory specialist in banking law, and argues that his dismissal by the Bank has made it impossible to get another job in this "profession." *Cf. Stretten v. Wadsworth Veterans Hospital, supra*, 537 F.2d at 366 n.13 ("a label which would prevent an individual from practicing his chosen profession at all may have consequences so severe that liberty would be infringed"). This argument is without merit. Bollow has retained his license to practice law, and there is nothing in the record except his own conclusory testimony to support the contention that he cannot find bank regulation or other legal work because of his dismissal.

## IV

▌ Finally, Bollow makes several other contentions, none of which merit reversal of the district court judgment. First, he contends that the Bank violated a provision of the Administrative Procedure Act (APA), 5 U.S.C. § 555(e), by failing to respond to certain written requests that Bollow made in connection with his discharge. Section 555(e) requires that an agency give prompt notice and explanation of the denial of any written request made by an interested person in connection with any "agency proceeding." However, we note that the APA's hearing procedures do not apply to disputes regarding the tenure of employees. 5 U.S.C. § 554(a)(2). Moreover, the chapter of the APA providing for judicial review

does not apply to "agency action committed to agency discretion by law." *Id.,* § 701(a)(2). As we have explained, section Four, Fifth provides for unfettered reserve bank discretion in the decision whether to terminate an officer or employee. Thus, even if one assumes that the Bank is a federal agency within the meaning of the APA, it does not appear that "agency proceedings" includes terminations of reserve bank employees pursuant to section Four, Fifth. Accordingly, we hold that the requirements of section 555(e) are inapplicable to the case at bar.

Second, Bollow contends that the district court erred in granting summary judgment in favor of the Bank on his slander claim. The defamation allegedly took place in a meeting between Sims and two of Bollow's acquaintances in the local banking community, Townsend and Zachry. The meeting was held at the request of Townsend, who sought to intervene on Bollow's behalf in the matter of his termination by the Bank. The alleged slander consisted of statements by Sims to Townsend and Zachry that Bollow was a "troublemaker" and had been guilty of misconduct in his job for a period of three years.

California law provides that

[a] privileged publication or broadcast is one made—

3. In a communication, without malice, to a person interested therein, . . . (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or (3) who is requested by the person interested to give the information.

Cal.Civ.Code § 47, subdiv. 3 (West 1972).

 The circumstances under which Sims allegedly spoke the asserted defamation clearly make it qualifiedly privileged within the meaning of subdivision three. Both Townsend and Zachary were legitimately "interested" in the reasons for Bollow's termination. *Compare Swift & Co. v. Gray,* 101 F.2d 976, 979–80 (9th Cir. 1939) (decided under section 47) *with Locke v. Mitchell,* 7 Cal.2d 599, 61 P.2d 922 (1936) *and Campbell v. Jewish Committee for Personal Service,* 125 Cal.App.2d 771,

774–75, 271 P.2d 185, 188 (1954). Townsend himself declared that he sought to intercede in the Board's decision to fire Bollow, not merely as Bollow's friend, but also as a representative of his (Townsend's) company and the bank holding company industry. Moreover, Townsend declared that at the time, he was considering offering Bollow a position within his company. Finally, Townsend's declaration shows that Zachary played an active (albeit subordinate) role in this effort to obtain Bollow's reinstatement. Thus, Sims' statements were qualifiedly privileged under subdivision three as having been given in response to a request by interested parties. *See generally* L. Eldredge, The Law of Defamation § 86, at 465–66 (1978); W. Prosser, Handbook on the Law of Torts § 115, at 788–89 (4th ed. 1971); Restatement (Second) of Torts § 595 & Comms. e, i, & j, at 268, 270–71, 273–74 (1977). Although this privilege is not absolute, Bollow presented no evidence of malice or any other factors—*e. g.,* excessive publication—which might have defeated it. *See, e. g., Roemer v. Retail Credit Co.,* 3 Cal.App.3d 368, 370–71, 83 Cal.Rptr. 540, 542–43 (1970); *De Mott v. Amalgamated Meat Cutters and Butchers,* 157 Cal.App.2d 13, 27, 320 P.2d 50, 59 (1958). Accordingly, we affirm the district court's grant of summary judgment in favor of the Bank on this claim.

 Third, Bollow contends that the district court erred in not imposing sanctions on the Bank for its delay in producing a requested document. The decision whether to penalize a party for dilatory conduct during discovery proceedings is committed to the sound discretion of the trial court. Fed.R.Civ.P. 37(a)(4); *e. g., Marquis v. Chrysler Corp.,* 577 F.2d 624, 640 (9th Cir. 1978). Because Bollow does not show that he was in any way prejudiced by the delay, we hold that the district court did not abuse its discretion by failing to impose sanctions in this instance. The denial of Bollow's motion for sanctions is affirmed.

 Finally, Bollow made several claims below based on an allegation that he was terminated because he exposed Bank and Board irregularities in the handling of a certain regulatory matter. He now contends that the district court erred in grant-

ing the Bank's and Board's motions for summary judgment on these claims. Regarding the Board, it is clear that the Board was neither legally nor factually implicated in the Bank's decision to terminate Bollow. With respect to the Bank, there was offered in support of its motion Reilly's sworn declaration that the decision to terminate Bollow was based solely on the latter's inability to get along with his co-workers. Bollow offered no evidence in response; he merely repeated the allegations of his complaint. A party cannot withstand a motion for summary judgment merely by asserting that the facts are disputed; he must present sufficient evidence to the court to show that there is indeed a genuine issue of material fact. *E. g., Palila v. Hawaii Department of Land and Natural Resources*, 639 F.2d 495 at 497 (9th Cir. 1981). Bollow's evidence consisted exclusively of disjointed and conclusory allegations based on mere suspicion and belief. He brought nothing before the court to show that he would be able to support his allegations with evidence at trial. Accordingly, we affirm the district court's grant of summary judgment on these claims in favor of the Bank and Board.

The district court judgment is AFFIRMED.