**Franklin JEFFERSON, Plaintiff,**

v.

**Edward E. ASHLEY and Robert Turner, Defendants.**

**Civ. No. 86–20–RE.**

United States District Court, D. Oregon.

Aug. 8, 1986.

Stephen L. Brischetto, Baldwin & Brischetto, Portland, Or., for plaintiff.

Charles H. Turner, U.S. Atty., Craig J. Casey, Asst. U.S. Atty., Portland, Or., for defendants.

## OPINION

REDDEN, District Judge:

Plaintiff brings this action for damages alleging his constitutional rights were violated when defendants made certain misrepresentations to prospective employers. Plaintiff contends that the statements by defendants were prompted by racial discrimination and are therefore illegal. Defendants have moved for summary judgment on a variety of grounds. I need discuss only defendants' argument that they are protected from plaintiff's suit under the doctrine of qualified immunity, as I find that argument to be dispositive of the action.

## FACTS

Plaintiff, Franklin Jefferson, is a black male formerly employed by the United States Army Corps of Engineers (the Corps). In September 1980, plaintiff filed a lawsuit against the Corps alleging racial discrimination. The action was resolved by negotiated settlement in which plaintiff agreed to resign his position and release the government from all known or future injuries arising out of his employment. The government agreed to pay plaintiff the sum of $77,500; to provide him with all the usual rights of one who voluntarily resigns and to credit him with 240 hours of annual leave. The government also agreed to issue a letter of recommendation "to whom it may concern," stating that plaintiff was a qualified crane operator and that he had performed that job in a satisfactory manner throughout his employment. Plaintiff was entitled to freely distribute this letter to any and all prospective employers.

After resigning plaintiff began an active search for work. Unable to secure a job as a crane operator, he sought other types of work. In 1984 he applied with the Oregon State Department of Corrections and the Department of Transportation. He was initially passed over by both departments. Later plaintiff asked why he was not hired for these positions. He was informed that he was passed over for the Corrections Division positions because, among other things, he had received unsatisfactory recommendations from the Corps. The unsatisfactory recommendations stemmed from communications of state officials with the defendants. Plaintiff was eventually hired by the Transportation Department.

In June 1984, Furlton Burns, Corrections Department Minority Affairs Manager, investigated plaintiff's application for corrections officer. Burns attempted to contact defendant Ashley who had signed the letter of recommendation prepared for plaintiff pursuant to the negotiated settlement. Burns was unable to speak with Ashley because he was out of town. Other qualified minority applicants were then hired.[1]

Mr. Burns reviewed plaintiff's application again in July 1984 after plaintiff had filed a complaint with the Labor Bureau. Burns was asked by the Labor Bureau to give plaintiff's application another look regarding future employment opportunities. Burns was able to contact Ashley in July 1984. Burns asked Ashley if he thought that plaintiff would be able to perform the work of a corrections officer. Ashley replied that he could not comment on whether plaintiff would make a good corrections officer, but that he knew he was a qualified crane operator.

Burns then asked Ashley if plaintiff had used excessive sick leave and if he had had any trouble getting along with co-workers while he was employed by the Corps. Defendant answered these questions in the affirmative but offered no further information. Ashley suggested that Burns call defendant Turner, the Corps' legal counsel, for any further information. Burns did, and was given the same answers to the same questions. In addition Turner mentioned that Jefferson had been involved in litigation with the Corps over issues that Jefferson sincerely believed valid, that he had prevailed on some claims and a settlement was reached in one other case.[2]

In September 1984, Lt. Gordon Kay again reviewed plaintiff's application for employment with the Corrections Division. He contacted Mr. Ashley for a reference and was told that Jefferson was a fully qualified crane operator. Lt. Kay asked if plaintiff had been punctual in reporting to work and was told that he was. He then inquired about plaintiff's use of sick leave and his ability to get along with co-workers. Mr. Ashley responded that there had been trouble regarding plaintiff's excessive use of sick leave and that plaintiff did not get along with other workers "as well as he could have."

When plaintiff filed complaints with the Bureau of Labor, Robert Sorenson was assigned to investigate the matter. Sorenson contacted Mr. Ashley in October 1985 regarding the complaint Jefferson had filed against the Corrections Division. Sorenson inquired if Ashley had been asked certain questions by Kay and Burns and if he had given certain answers. Ashley responded that he recalled the questions and answers. The questions were those asked about plaintiff's excessive use of sick leave and his ability to get along with co-workers.

Sorenson also remembers contacting Mr. Turner and asking the same questions and getting the same answers. Mr. Turner, however, does not recall the conversation. Sorenson closed that investigation in late 1985 with a finding that there was not substantial evidence of discrimination.

Plaintiff filed this lawsuit on January 7, 1986, alleging that Ashley's and Turner's remarks to the Corrections Division personnel were discriminatory, depriving him of a liberty interest without due process of law.

## DISCUSSION

Plaintiff contends that defendants are liable to him for civil damages under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In that case the Supreme Court held that federal officials could be personally liable for constitutional torts committed by them in the course of their employment. However, government officials have been granted qualified immunity to such liability in

---

1. The positions which were available in June 1984 had to be filled before Ashley's return because of an impending hiring freeze.

2. Mr. Jefferson has been involved in several lawsuits with the Corps over employment issues. Those claims are not pertinent to the present action, however.

subsequent cases. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

■■■ Government officials are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. *See also Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984). Whether an official prevails on a defense of qualified immunity depends on the "objective reasonableness of [his] conduct as measured by reference to clearly established law." *Id.*

On summary judgment I must determine not only currently applicable law, but whether the law was clearly established at the time the alleged constitutional tort was committed. *Id.* If the law or right was not clearly established an official could not be expected to anticipate subsequent legal developments, nor could he be fairly said to know that his conduct violated the law or rights of an individual. *Id.* The test necessarily focuses on the objective legal reasonableness of an official's act.

Plaintiff argues that his complaint is grounded in the due process clause of the fifth amendment which provides that "no person shall be deprived of life, liberty, or property without due process of law." Plaintiff further argues that the constitution confers on him a right to be free from illegal discrimination. Plaintiff is correct. *Davis v. Passman,* 442 U.S. 228, 236, 99 S.Ct. 2264, 2272, 60 L.Ed.2d 846 (1979). I must now decide if the remarks made by defendants amount to "illegal discrimination" and thus violate plaintiff's liberty interest to be free of such actions.

The parties have failed to cite, and my research has failed to uncover, any binding precedent on this issue. I therefore look to whatever decisional law is available to ascertain whether the alleged actions violated any clearly established law or right. *Capoeman v. Reed,* 754 F.2d 1512, 1515 (9th Cir.1985).

In *Bollow v. Federal Reserve Bank,* 650 F.2d 1093 (9th Cir.1981). *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982), the Court held that termination of federal employment did not violate a clearly established constitutional liberty interest unless it stigmatized the employee to such a degree that he was unable to take advantage of other employment opportunities. *Id.* at 1101. The Court went on to explain that:

> This court has described the stigma that infringes liberty interests as that which *seriously* damages a person's reputation or *significantly* forecloses his freedom to take advantage of other employment opportunities. [citations omitted]. Subsequent panels have set the boundary of liberty interest at accusations of 'moral turpitude' such as dishonesty or immorality—i.e., charges that do not reach this level of severity do not infringe constitutional liberty interests [citations omitted]. ... [D]ismissal for reasons of incompetence or inability to get along with co-workers [does] not infringe liberty interests.

*Id.* at 1101 (emphasis in original).

The Court also noted in *Bollow,* that the reasons for plaintiff's dismissal had never been communicated and therefore could not harm his good name, reputation, honor or integrity. However, the Court further noted that even if the reasons had been publicly disclosed plaintiff's liberty interest would not have been infringed upon because the reasons were no more than an inability to get along. *Id.*

In *Loehr v. Ventura County Community College District,* 743 F.2d 1310 (9th Cir. 1984), the plaintiff argued that several public statements made by defendants inpugning him both before and after his employment termination violated his liberty interests. The plaintiff cited instances of board members stating he would be fired for

incompetence, of the board holding public hearings regarding his competence and subsequent newspaper articles covering the hearings. The Court held that none of the statements rose to the level of the test set forth in *Bollow*, and held that plaintiff's liberty interests had not been violated by the statements. The Court did not consider any statements made by defendants after the termination of his employment. *See also Clemente v. United States*, 766 F.2d 1358, 1366 (9th Cir.1985) (reasons for dismissal must sufficiently stigmatize individual so that he is unable to work).

 I find that the comments made by the defendants did not stigmatize plaintiff to such a degree that his character and reputation were so tarnished that he was unable to take advantage of other employment opportunities. The comments were that he was unable to get along well with other employees and that he used excessive sick leave. These comments do not accuse plaintiff of any moral turpitude or dishonesty and as such do not violate any liberty interest.

I also note that these comments were made more than two years after plaintiff resigned from the Corps. The Ninth Circuit has never discussed the issue of whether postemployment comments by government officials ever involve the due process clause of the fifth amendment. The Second Circuit has considered the issue. In *Gentile v. Wallen*, 562 F.2d 193 (2nd Cir.1977), the Court held that absent an employment relationship, derogatory statements made by government officials amount to "at most the type of simple defamation that the Supreme Court held not to trigger due process rights in *Paul v. Davis*, 424 U.S. 693, 701–10 [96 S.Ct. 1155, 1160–64, 47 L.Ed.2d 405] (1976)." The plaintiff in *Gentile* was formerly employed as a school teacher and was discharged on charges of falsifying records. She was complaining about comments made by the school board treasurer to the State Division of Unemployment, following her termination, to the effect that she was discharged for misrepresentations made by her.

Although this decision is not binding, I find it helpful in reaching my final conclusion. Even if the comments made by defendants in the present action could be construed as "stigmatizing" to such a degree that plaintiff was precluded from securing other employment, they were made outside of the context of the employment relationship, and would amount only to defamation, if in fact they were defamatory. Additionally, if the comments were made in breach of the negotiated settlement, then plaintiff might have a claim for breach of contract, but not a constitutional claim.

## CONCLUSION

Defendants are entitled to summary judgment on the grounds that they are protected from liability under the doctrine of qualified immunity. Plaintiff has failed to show that defendants violated any clearly established law or right. On the contrary, the law indicates that the comments made by defendants do not infringe upon any of plaintiff's constitutional rights. I need not address any of the other grounds asserted by defendants as I find the qualified immunity defense to be dispositive.

Both sides have filed motions to strike certain affidavits and testimony. None of the evidence moved against affected my ruling on this motion. I therefore need not rule on those motions which are now moot.