William E. JONES; Victor E. Jones; and Eric W. Snethen, Plaintiffs–Appellants,

v.

UNITED STATES of America; United States Department of Interior; Bureau of Land Management; Bruce Babbitt, Secretary of Interior, Defendants–Appellees.

No. 96–16457.

United States Court of Appeals, Ninth Circuit.

Submitted July 16, 1997. *

Decided Aug. 11, 1997.

---

\* The panel finds this case appropriate for submission without oral argument, pursuant to Fed. R.App. P. 34(a) and Ninth Cir. R. 34–4.

William J. Kopeny, Kopeny & Powell, Irvine, CA, for plaintiffs-appellants.

Lisa E. Jones, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendants-appellees.

Before: FARRIS and TASHIMA, Circuit Judges, and STAGG,** District Judge.

TASHIMA, Circuit Judge:

### I. Overview

Plaintiffs are former holders of an unpatented mining claim on federally-owned land. The Interior Board of Land Appeals affirmed the decision of the Bureau of Land Management ("BLM") holding that their claim was voided by operation of law. Plaintiffs challenged that decision in the district court on constitutional grounds. The district court granted summary judgment in favor of the government and plaintiffs timely appealed. We review de novo the district court's grant of summary judgment. *King v. AC & R Advertising*, 65 F.3d 764, 767 (9th Cir. 1995). We have jurisdiction under 28 U.S.C. § 1291 and we affirm.

Plaintiff William E. Jones ("Jones")[1] first argues that his procedural due process rights were violated because the government did not afford him a reasonable opportunity to familiarize himself, and comply with, the pro-

** Honorable Tom Stagg, Senior United States District Judge for the Western District of Louisiana, sitting by designation.

1. For convenience, we refer only to Jones. Because all three appellants make the same arguments and are identically situated, our discussion of Jones' claims applies equally to all appellants.

visions of a statute which assertedly operated to deprive him of his unpatented mining claim. Jones also asserts, for the first time on appeal, that his equal protection rights were violated when the government provided individual notices of the statute's requirements to all other similarly situated holders of unpatented mining claims, but failed to provide him with such individual notice. We agree with the district court that the government did not violate Jones' due process rights, and we decline to address his equal protection claim.

## II. Statutory Background

By legislation enacted on October 5, 1992, every holder of an unpatented mining claim on federal land, such as Jones, was required to pay a per-claim annual fee of $100 to the Secretary of the Interior (the "Secretary") by August 31, 1993. Department of the Interior and Related Agencies Appropriations Act, 1993, Pub.L. No. 102–381, 106 Stat. 1374, 1378 (1992) ("1992 Act"). The statute provided that failure to pay the required fee would "conclusively constitute an abandonment of the unpatented mining claim" by the claimant. 1992 Act, 106 Stat. at 1379. The 1992 Act also provided an exemption from the $100 fee requirement for small miners. *Id.* at 1378. *See generally, Kunkes v. United States,* 78 F.3d 1549, 1550–51 (Fed.Cir.) (describing in detail provisions of 1992 Act), *cert. denied,* — U.S. ——, 117 S.Ct. 74, 136 L.Ed.2d 34 (1996). Jones did not make the payment required by the 1992 Act nor did he seek to qualify under the small miner's exemption, thus losing his mining claim.

Prior to the enactment of the 1992 Act, Jones and other holders of unpatented mining claims were not required to make any payments to the government. Instead, the Federal Land Policy and Management Act of 1976 ("1976 Act") required an annual filing with state authorities and with the BLM prior to December 31st. 43 U.S.C. § 1744(a). Ordinarily, mining claim holders

satisfied the 1976 Act's requirements by filing an "affidavit of assessment work" certifying that at least $100 worth of labor had been performed on each claim held during the prior assessment year. 43 U.S.C. § 1744(a); 30 U.S.C. § 28.[2] Under both the 1976 Act and the 1992 Act, each assessment year started at 12:00 noon on September 1st. 30 U.S.C. § 28; 1992 Act, 106 Stat. at 1378; 43 C.F.R. § 3833.0–5(n) (1991); 43 C.F.R. § 3833.1–5 (1993). Failure to comply with the 1976 Act's filing requirements was "deemed conclusively to constitute an abandonment of the mining claim." 43 U.S.C. § 1744(c). Jones had regularly complied with these requirements by making an appropriate and timely filing for each prior year.

The 1992 Act suspended the requirements of the 1976 Act. As a result, the requirements Jones needed to fulfill in order to keep his mining claim changed and so did the deadline for meeting those requirements. Under the 1976 Act, the requirements for the 1992–93 assessment year would have been met by filing an affidavit of assessment work with BLM by December 30, 1993. The 1992 Act instead required Jones, for the 1992–93 assessment year, to make a $100 payment to the Secretary by August 31, 1993, or, if he qualified for the small miner's exemption, to comply with the 1976 Act's filing requirements by August 31, 1993. 1992 Act, 106 Stat. at 1378.[3]

## III. Discussion

 In order to comply with due process in connection with the enactment of the 1992 Act, the government was required to "afford the citizenry a reasonable opportunity to familiarize itself with [the Act's] terms and to comply." *Texaco, Inc. v. Short,* 454 U.S. 516, 532, 102 S.Ct. 781, 793, 70 L.Ed.2d 738 (1982); *see United States v. Locke,* 471 U.S. 84, 108, 105 S.Ct. 1785, 1799, 85 L.Ed.2d 64 (1985) (same) (citing *Texaco*). We agree

---

**2.** Other ways of satisfying the 1976 Act's requirements are not relevant here. *See generally, United States v. Locke,* 471 U.S. 84, 87–89, 105 S.Ct. 1785, 1788–89, 85 L.Ed.2d 64 (1985) (describing in detail provisions of 1976 Act).

**3.** The 1992 Act also required holders of unpatented mining claims to make a $100 payment for the 1993–94 assessment year; this payment was also due on August 31, 1993. 1992 Act, 106 Stat. at 1378.

with the district court that the period between the enactment of the statute and the August 31st deadline, a period of almost 11 months, afforded affected claim holders a reasonable opportunity to familiarize themselves, and to comply, with the new requirements imposed by the 1992 Act.

■ Jones is presumed to have acquired knowledge of the new requirements sometime in October or, at least, by mid-November of 1992. The statute was enacted on October 5, 1992, and published in the Statutes at Large, soon thereafter. "All persons in the United States are chargeable with knowledge of the Statutes–at–Large." *Bollow v. Federal Reserve Bank,* 650 F.2d 1093, 1100 (9th Cir.1981).

■ Jones is also charged with knowledge of the 1992 Act's requirements by virtue of the notice published in the Federal Register on November 16, 1992. *See* Notice, Department of the Interior, 57 Fed.Reg. 54102 (1992). This notice contained a clear statement describing the new requirements imposed by the 1992 Act. *Id.* "Publication in the Federal Register is legally sufficient notice to all interested or affected persons regardless of actual knowledge or hardship resulting from ignorance." *Friends of Sierra R.R., Inc. v. ICC,* 881 F.2d 663, 667–68 (9th Cir.1989).[4]

■ Further, Jones must be presumed to have acquired knowledge of the new requirements upon their enactment, or at least upon the initial publication of the new requirements in the Federal Register, because "[i]t is well established that persons owning property within a State are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property." *Texaco,* 454 U.S. at 532, 102 S.Ct. at 793 (footnote omitted).

As the district court recognized, *Texaco* defeats Jones' claim. In that case, holders of mining claims on non-federal lands argued that their due process rights had been violated when the State of Indiana failed adequately to notify them of the legal requirements of a statute providing for the automatic lapse of every mining claim not used for more than 20 years. The statute allowed the owner to avoid the automatic lapse by filing a statement of claim in a county recorder's office. It also provided that no claim would lapse during the first two years after the enactment of the statute.[5]

In rejecting the due process claim of the claim holders, the Court found the two-year grace period sufficient to provide an opportunity for mineral owners to become familiar with the new law. *Id.* at 532–33 & n. 27, 102 S.Ct. at 793–94 & n. 27. The Court first noted that property owners are presumed to be aware of statutes affecting their property interests. *Id.* In addition, the Court acknowledged that a legislature's judgment as to the length of time necessary to afford an adequate opportunity to become familiar with a new law is entitled to the "greatest deference" from courts. Specifically, the Court stated:

> A legislative body is in a far better position than a court to form a correct judgment concerning the number of persons affected by a change in the law, the means by which information concerning the law is disseminated in the community, and the likelihood that innocent persons may be harmed by the failure to receive adequate notice.

*Id.* at 532, 102 S.Ct. at 793 (footnote omitted).

The due process claim rejected in *Texaco* was stronger than Jones' claim. Viewed in

---

**4.** In addition, BLM published in the Federal Register a set of proposed rules to implement the 1992 Act on March 5, 1993. Rental Fees, Mining Claim Recordation, and Assessment Work, 58 Fed.Reg. 12878 (1993). The final regulations were published in the Federal Register on July 15, 1993. Rental Fees, Mining Claim Recordation, and Assessment Work, 58 Fed.Reg. 38186 (1993).

**5.** In relevant part, the Indiana statute provided that:

> Any interest in coal, oil and gas, and other minerals, shall, if unused for a period of 20 years, be extinguished, unless a statement of claim is filed.... The statement of claim ... shall be filed ... prior to the end of the twenty year period ... or within two years after the effective date of this act, whichever is later.... Upon the filing of the statement of claim within the time provided, it shall be deemed that such mineral interest was being used on the date the statement of claim was filed.

*Texaco,* 454 U.S. at 519 n. 3 & n. 7, 102 S.Ct. at 786 n. 3 & 787 n. 7.

isolation, the fact that Jones was afforded less time (nine to eleven months) to become familiar with the new statute than the *Texaco* claimants were (two years) makes Jones' claim seem somewhat stronger than the one asserted in *Texaco*. However, Jones' position is actually weaker because the *Texaco* claimants had never been subjected to any regulation, while Jones had actual knowledge of the existing prior regulations applicable to his unpatented mining claim. Therefore, Jones had more reason than the *Texaco* plaintiffs to be alert to possible regulatory changes; thus the *Texaco* rationale applies with greater force to him. *Id.* at 533, 102 S.Ct. at 794 (examining how "unprecedented" the new statute is, as well as likelihood that statute will "come to the attention of citizens reasonably attentive to the enactment of laws affecting their rights"); *id.* at 546–47 & 549–50, 102 S.Ct. at 800–01 & 802–03 (Brennan, J., dissenting) (arguing for an examination of whether the property owner is in a position where "he might reasonably be called upon to increase his awareness of his legal obligations"); *Locke*, 471 U.S. at 108 n. 16 & 109, 105 S.Ct. at 1800 n. 16 & 1801 (1976 Act's filing requirement "was not so unlikely to come to the attention of [affected individuals] as to render unconstitutional the notice provided by the 3–year grace period") (citing Justice Brennan's dissent in *Texaco*, 454 U.S. at 547, 102 S.Ct. at 801).

Under the principles established by *Texaco*, and in light of the simplicity of the new requirement and the minimal burden it imposes on mining claim holders, we conclude that the period of 11 to nine months between publication of the 1992 Act's requirements and the August 1993 deadline provided Jones with more than a reasonable opportunity to familiarize himself and to comply with the 1992 Act's requirements. *See County Line Joint Venture v. City of Grand Prairie*, 839 F.2d 1142, 1143 n. 3 & 1146 n. 6 (5th Cir.

1988) (six months held sufficient for property owners to familiarize themselves with new statute providing for the automatic extinguishment of their permit after six months of non-use).

Jones further asserts that: (i) the 1992 Act changed the usual filing date from December 30th to August 31st; (ii) only the publication of final regulations in July 1993, "46 days" before the August deadline, actually required payment by the new, earlier filing date; (iii) after his mining claim was voided, Congress changed the name of the new fee from the "misleading 'Rental Fee' to 'Claim Maintenance Fee';" and (iv) the government found it appropriate to send individual notice of the new requirements to all holders of unpatented mining claims in California. These arguments are unpersuasive.

First, the change in deadlines did not create, as Jones contends, a "trap for the unwary." As noted above, Jones had sufficient time in which to learn of the new deadline and act to meet it.

Second, in this context, we find the date on which the final regulations were issued irrelevant. The 1992 Act itself explicitly spelled out the new requirements Jones had to meet for the 1992–93 assessment year and the consequences of failing to do so.[6] The agency simply had no room to diverge from the clear mandate of the 1992 Act regarding the $100 payment, the August deadline, and the automatic forfeiture for failure to comply. Indeed, both the notice published by the Department of the Interior in November 1992, announcing the new requirements, and the proposed rules published by BLM in March 1993 make it clear that the agency understood that the requirements at issue here were mandated by the 1992 Act. Notice, Department of the Interior, 57 Fed.Reg. 54102 (1992); Rental Fees, Mining Claim Recordation, and Assessment Work, 58 Fed. Reg. 12878 (1993) (proposed rules). There-

---

**6.** In relevant part, the 1992 Act provided as follows:

> [F]or each unpatented mining claim ... on federally owned lands, in lieu of the [1976 Act's requirements], each claimant shall ... pay a claim rental fee of $100 to the Secretary of the Interior or his designee on or before August 31, 1993 in order for the claimant to hold such unpatented mining claim ... for the

assessment year ending at noon on September 1, 1993.

. . .

> [F]ailure to make the annual payment of the claim rental fee as required by this Act shall conclusively constitute an abandonment of the unpatented mining claim ... by the claimant.

1992 Act, 106 Stat. at 1378.

fore, Jones had absolutely no reason to expect the regulations to stray from the explicit terms of the 1992 Act.

Third, we do not see, and Jones has not explained, the relevance of the name change. Jones merely asserts that the old name for the new fee was misleading. However, the name given by the 1992 Act to the $100 fee is irrelevant because that statute made clear both the substance of the new requirement and the relationship between that requirement and suspension of the 1976 Act's requirements. 1992 Act, 106 Stat. at 1378 (stating that new fee was being imposed "in lieu of the assessment work requirements contained in the Mining Law of 1872 (30 U.S.C. 28–28e), and· the filing requirements contained in section 314(a) and (c) of the [1976 Act] (43 U.S.C. 1744(a) and (c))").

Fourth, that the government found it desirable and advisable to send individual notices is not helpful in deciding whether the statute afforded affected claim holders a reasonable opportunity to learn of, and comply with, the 1992 Act's requirements. The government's exercise of its freedom to go beyond the requirements of due process in notifying affected citizens of relevant changes in the law does not alter our due process analysis.

Finally, Jones contends that his equal protection rights were violated when the government sent individual notice of the new requirements to all holders of mining claims located in California, but failed to notify him. He argues that, because he did not receive notice, there is a factual dispute as to whether the government sent him the notice it sent to all other similarly situated mining claim holders. We decline to review this contention because Jones did not present it to the district court. *See United States v. Flores–Payon*, 942 F.2d 556, 558 (9th Cir.1991). Jones has not advanced any reason why we should deviate from the general rule that we do not address legal theories raised for the first time on appeal. *See id.* (discussing exceptions to rule).

The judgment is AFFIRMED.