**616**

**Eula M. McCULLOUGH, Plaintiff,**

v.

**The BOARD OF TRUSTEES OF the NORTH PANOLA CONSOLIDATED SCHOOL DISTRICT et al., Defendants.**

**No. DC 74–98–S.**

United States District Court,
N. D. Mississippi.

July 29, 1976.

James O. Ford, Tupelo, Miss., for plaintiff.

A. Cinclair May, McClure, McClure & May, Sardis, Miss., William B. Compton, Witherspoon, Compton & Mason, Meridian, Miss., for defendant.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

The action sub judice having been tried to the court on a former day and the parties having submitted proposed findings of fact, conclusions of law and posttrial briefs, the court hereby adopts the following as the findings of fact and conclusions of law for which provision is made in Fed.R.Civ.P. 52.

*A. Findings of Fact.*

Plaintiff Eula M. McCullough (McCullough) is a black person who resides in Memphis, Shelby County, Tennessee. She was employed by the North Panola Consolidated School District (district) for approximately 25 years as an elementary classroom teacher under successive one year written contracts of employment. McCullough was last employed by the district for the 1971–72 school year under a written contract of employment which was completely performed by both parties. The contract expired by its own terms and did not contain a provision for a renewal or extension thereof.

The district is situated south of and adjacent to the Mississippi-Tennessee state line. McCullough resided in Memphis during all times pertinent to this action and commuted daily to her work in the district.

The district complies with the statutory provisions of the State of Mississippi which sets forth the procedure for the selection, recommendation, election and employment of teachers. The pertinent statutory provisions are contained in Miss.Code Ann. §§ 37–9–17, 37–9–23, 37–9–25 (1972). Each classroom teacher within the district is em-

ployed for a 1 year period only and a written contract is entered into between the district and each of its teachers. The selection, recommendation and election process and procedure is repeated each year.

The procedure calls for the principal of each attendance center, in the exercise of his or her professional judgment and discretion, to select and recommend to the superintendent each teacher to be employed at the center for the next ensuing school year; the superintendent in turn, in the exercise of his or her professional judgment and discretion, has the option of accepting the principal's recommendations or declining the same; if the superintendent declines to accept the recommendation of the principal, then in that event the principal must select and recommend another teacher to the superintendent; the superintendent does not have the power or authority to initiate a recommendation for a particular teacher; and, once the superintendent approves the principal's recommendation, then the superintendent in turn recommends such teacher to the board of trustees of the district. The board of trustees in turn either approves or disapproves the teacher who has been so recommended first by the principal and in turn by the superintendent. If the board of trustees does not see fit to approve a teacher who has been so recommended, then in that event the entire selection and recommendation process must begin all over with a new teacher selected and recommended. The board of trustees does not have the statutory power or authority to initiate a recommendation or approve for employment any teacher who has not been first selected and recommended by the principal and in turn approved and recommended to the board of trustees by the superintendent.

McCullough served as a classroom teacher at the Sardis Elementary School (Sardis) for the 1971–72 school year. Mr. James A. Barnett (Barnett) the principal of the school declined to recommend McCullough for reemployment for the 1972–73 school year, and on April 5, 1972, notified her of this fact. Barnett wrote McCullough a letter on that date which he hand delivered

and in which he advised that he was not recommending McCullough because she had been sleeping on duty. Such conduct constituted a violation of the published rules of the school. McCullough was advised in the letter that she was entitled to a hearing before the board of trustees if she desired a hearing and would make a written request for the same.

McCullough wrote a letter to the board on August 15, 1972, in which she advised that she desired a hearing. This letter was delivered to Mr. Rupert Purvis (Purvis), superintendent of the school. Purvis acknowledged receipt of the request in a letter addressed to McCullough dated August 28, 1972. McCullough was advised in the letter that a hearing would be afforded her and that she would be notified of the hearing date. Purvis contacted the board officials and arranged for the hearing at the October 1972 meeting of the board. McCullough was advised of the meeting date by Purvis who called her over the telephone to deliver the message. There is a conflict in the testimony on this point. McCullough testified that Purvis did not call her. The testimony of Purvis is supported by evidence introduced at the trial that upon receipt of the letter from McCullough Purvis contacted members of the board and made arrangements for the hearing. Purvis further testified that McCullough indicated that she would appear at the meeting for the hearing. She did *not*, however, appear, nor did she at any time seek another hearing.

On several different occasions after the beginning of the 1972–73 school year, McCullough contacted the superintendent of the school with reference to employment in some other elementary school of the district. McCullough did not on any of these occasions request the superintendent to afford her a hearing on the refusal of the district to renew her contract for the Sardis School for the 1972–73 school year.

The evidence is clear and convincing that McCullough did in fact sleep while on duty at the Sardis school on frequent occasions during the 1971–72 school year and that

such conduct on her part was not in the best interest of the children who were under her charge. The evidence reflects that during the 1971–72 school year, when not on duty at the school, McCullough worked for a Kentucky Fried Chicken restaurant in Memphis, Tennessee. This work was performed on week-ends and frequently on night shifts during the days upon which McCullough was engaged in her work at the school. The evidence shows that she was holding down two jobs, one at the school during the daytime and the other at night at the restaurant.

Barnett was the principal at the Sardis school during the 1970–71 school year. McCullough was a member of his faculty at the time. Barnett recommended McCullough for reemployment for the 1971–72 school year. McCullough's sleeping habit started and had its beginning during the 1970–71 school year but became more severe in the 1971–72 school year.

The court finds that McCullough's race did not in any way influence the decision of Barnett to dispense with her services; that Barnett did not recommend McCullough for reemployment for the 1972–73 school year solely because she slept while on duty and failed in the effective performance of her assigned duties.

Although McCullough was notified April 5, 1972, that she would not be reemployed by the district for the 1972–73 school year, she did not institute the suit sub judice until August 19, 1974.

The district is not under an order of the court to desegregate its schools. The district entered into a voluntary agreement with the United States Department of Health, Education and Welfare (HEW) to desegregate its school and for the period pertinent to this action there was in effect a faculty provision as follows:

> If, as a result of a program for complying with Title VI, there is to be a reduction in the total professional staff of a school system, or professional staff members are to receive assignments of lower status or pay, the staff members to be released or

demoted must be selected from all the school system's professional staff members without regard to race, color, or national origin and on the basis of objective and reasonable standards. In addition, in such a situation, no staff vacancy may be filled through recruitment from outside the system unless school officials first determine that none of the displaced staff members is qualified to fill the vacancy.

The above-quoted provision is similar to the "Singleton Plan" adopted by the United States Court of Appeals for the Fifth Circuit in *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (1969).

The entire scope of the Singleton provisions is not applicable to the agreement. Laying aside this feature of the case for the moment, however, the record reflects that the district did not develop or require the development of nonracial objective criteria to be used in the selection of staff members to be dismissed or demoted in the desegregation process contemplated by the district and HEW. While there are some differences between the faculty desegregation plan adopted by the Fifth Circuit in *Singleton* and that contained in the district's voluntary plan, for the purpose of the court's decision, they will be treated and considered as identical.

The questions presented by the record revolve around the due process and Singleton issues; that is to say, whether the plaintiff had the right of a due process hearing on the question of her discharge, and if so, whether she waived the right; and whether plaintiff is a Singleton teacher; and if so, whether she was discharged in violation of Singleton's standards.

### B. The Due Process Issue.

■ Assuming, but without deciding, that McCullough's long tenure of service in the district created a property right protected by the due process clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States, *Lucas v.*

*Chapman*, 430 F.2d 945 (5th Cir. 1970);[1] and that the reason for and manner of her discharge infringed upon a constitutional "liberty" interest, the evidence is clear and convincing that she waived the right to a hearing. It can hardly be disputed that a constitutional right to a procedural due process hearing may be waived providing the right is recognized by the party and there is an intentional waiver thereof. See *Johnson v. Zerbst* (1938), 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. McCullough is an educated person and is capable of understanding her rights.

### C. The Singleton Issue.

■ It is clear from recent decisions of the Fifth Circuit that a faculty member is entitled to the benefit of the Singleton provision only in instances where there is to be reduction in staff brought about by the desegregation process. *Pickens v. Okolona Municipal Separate School District*, 527 F.2d 358 (5th Cir. 1976); *Thompson v. Madison County Board of Education*, 496 F.2d 682 (5th Cir. 1974); *McLaurin v. Columbia Municipal Separate School District*, 478 F.2d 348 (5th Cir. 1973).

Barnett's determination to dismiss McCullough was not, in any respect, related to a reduction of staff occasioned by the desegregation of the schools of the district.

The voluntary desegregation plan became effective in the 1970–71 school year. McCullough was assigned to the Sardis school for that year. Barnett was the principal of the school and recommended that McCullough be reemployed for the next school year. During this year, the district employed 28 white teachers and 57 black teachers, or a total of 85 teachers in the elementary schools. The ratio was 33% white and 67% black. The total number of elementary teachers employed in the district for the 1972–73 school year was 74, 21 of which were white teachers and 53 of which were black. The ratio was 28% white

and 72% black. Twenty four of the teachers did not return for the 1972–73 school year. A total of 13 new elementary teachers were hired for the 1972–73 school year. There was a net reduction of 11 elementary teaching positions in the district between the 1971–72 school year and the 1972–73 school year. There was not a single elementary school teacher dismissed at the close of the 1971–72 school year because or on account of the desegregation process. McCullough was the only elementary teacher who was not recommended for reemployment. The other 23 teachers who did not return to the elementary schools after the 1971–72 school year either resigned, retired, or were promoted out of the elementary system. There were 13 elementary teaching vacancies at the beginning of the 1972–73 school year which had to be filled by new teachers. The reduction in the number of elementary teachers needed to staff the elementary schools in the district for the 1972–73 school year, was occasioned by the loss of student population following the 1971–72 school year. The district did not find it necessary to dismiss or demote a single teacher to accomplish the reduction. There was no need for the school district to adopt or apply an objective and reasonable non-discriminatory criteria to accomplish a reduction in the elementary staff.

The Singleton requirements apply only in instances where there is to be a reduction in teaching assignments brought about by the desegregation of the schools of the district. The court has concluded that McCullough was not a Singleton teacher and that the rule promulgated by Singleton does not apply in her case.

The court finds that the district had the right to dispense with McCullough's services for any reason satisfactory to the district. Assuming, but without deciding, that her long period of employment created a property right of constitutional dimension and required a due process hearing in the

---

1. In *Lucas* at page 947, the court said:

    Lucas had no tenure and his one-year contract was not breached. But his long employment in a continuing relationship through the use of renewals of short-term contracts was sufficient to give him the necessary expectancy of reemployment that constituted a protectible interest.

termination of employment the court finds that she knowingly and intentionally waived the right.

The plaintiff is not entitled to prevail in the action sub judice. An appropriate order will be entered dismissing the complaint.