[No. E000748. Fourth Dist., Div. Two. July 23, 1985.]

DAVID C. GARNER, Plaintiff and Appellant, v.
CITY OF RIVERSIDE, Defendant and Respondent.

**COUNSEL**

Samuel J. Wells for Plaintiff and Appellant.

Parker & Dally and Joan E. Partritz for Defendant and Respondent.

OPINION

**KAUFMAN, J.**—David C. Garner (petitioner) appeals from an order dismissing his petition for writ of administrative mandate on the ground it was not timely filed. We affirm.

*Facts*

Petitioner was employed as a police officer by respondent City of Riverside from approximately April 13, 1972, through December 25, 1978. The city had elected to have certain of its employees, including petitioner, become members of the Public Employees' Retirement System (PERS) and entered into a contract for that purpose pursuant to Government Code sections 20450[1] and 20493.[2] (All statutory references will be to the Government Code unless otherwise specified.)

In April 1979, petitioner applied for service-connected disability retirement. His application for retirement was received by PERS on April 17, 1979. On September 26, 1980, PERS corresponded with the City of Riverside's City Manager concerning petitioner's application (see § 21024).[3] On November 6, 1980, Riverside's City Manager, Douglas G. Weiford, wrote to PERS stating in pertinent part: "David Garner was terminated for cause on April 13, 1979 and there were no mental or physical difficulties at the time he was separated. [¶] Pursuant to authority delegated to me by action of the City Council of the City of Riverside under section 21034 Government Code and after review of evidence relevant thereto, I hereby determine that David C. Garner, a local safety member of the Public Employees Retirement System and formerly employed by the City of Riverside, was not incapacitated physically or mentally within the meaning of the Public Employees Retirement law for performance of his duties in the position of police officer at the time of his separation."

---

[1]Section 20450 reads in part: "Any public agency may participate in and make all or part of its employees members of this system by contract entered into between its governing body and the board pursuant to this part . . . ."

[2]Section 20493 reads: "Any contract heretofore or hereafter entered into shall subject the contracting agency and its employees to all provisions of this part and all amendments thereto applicable to members, local miscellaneous members, or local safety members except such as are expressly inapplicable to a contracting agency unless and until it elects to be subject to such provision."

[3]Section 21024 reads in part: "On receipt of an application for disability retirement of a member, other than a local safety member, the board [the Board of Administration of the Public Employees' Retirement System] shall, or of its own motion it may, order a medical examination of a member who is otherwise eligible to retire for disability to determine whether the member is incapacitated for the performance of duty. On receipt of such application with respect to a local safety member, the board shall request the governing body of the contracting agency employing such member to make such determination."

On November 26, 1980, PERS wrote to petitioner, stating in relevant part: "In accordance with Government Code, Section 21025,[4] your employer has determined that you are not incapacitated for the performance of your duties as a Policeman. [¶] In accordance with the determination of City of Riverside, the application for your disability retirement is denied."

Apparently petitioner obtained a writ of mandate in Riverside Superior Court action No. 146067 which directed that a further hearing be held, because the parties are agreed that on August 27, 1982, the city manager conducted a hearing in accordance with an order of the court in that case. Thereafter, on October 15, 1982, the city manager issued his findings and decision in a letter addressed to petitioner with a copy sent to petitioner's attorney. Although the findings were stated in some detail, the ultimate finding was that at the time petitioner was terminated from employment with the Riverside Police Department he was not incapacitated either mentally or physically from performing the duties of a police officer. Accordingly, the application for disability was denied.

By letter dated October 22, 1982, to PERS with a copy to petitioner, the city manager notified PERS of his findings and determination in accordance with section 21025. (See fn. 4, *ante.*)

More than 10 months later, on September 2, 1983, petitioner filed the petition for writ of administrative mandate underlying this appeal. The petition alleged in relevant part: "On October 15, 1982, Respondent, BOARD OF RETIREMENT issued a Decision and the Findings of Fact denying the application of Petitioner for a service-connected disability retirement.[5] . . . [¶] The Findings of Respondent Board of Retirement are not supported by the weight of evidence . . . ."

---

[4]Section 21025 reads in pertinent part: "If the medical examination and other available information show to the satisfaction of the board, or in case of a local safety member the governing body of the contracting agency employing such member, that the member is incapacitated physically or mentally for the performance of his duties . . . and is eligible to retire for disability, the board shall forthwith retire him for disability . . . . The governing body of a contracting agency upon receipt of the request of the board pursuant to Section 21024 [see fn. 3, *ante*] shall certify to the board its determination under this section that the member is or is not so incapacitated."

[5]Immediately following the allegation that on October 15, 1982, "Respondent, BOARD OF RETIREMENT issued a Decision and the Findings of Fact," petitioner alleged that a "full, true, and accurate copy of the Decision and Findings of Fact (thereby, denying the service-connected disability retirement) is attached hereto as Exhibit 'A', and is incorporated herein by this reference." Undoubtedly petitioner had reference to the detailed findings of fact and decision set forth in the letter of the city manager dated October 15, 1982, however, what he actually attached to his petition was a copy of the letter of the city manager dated November 6, 1980, determining that petitioner was not incapacitated to perform his duties as a police officer at the time his employment was terminated.

Although the city filed an answer to the petition for writ of administrative mandate and later an amended answer, it also filed what was denominated a motion to dismiss the petition on the ground it was not timely filed. After hearing, the court granted the motion, thereafter denied petitioner's motion for reconsideration and ultimately ordered the petition dismissed. It is from that order that petitioner appeals.

### Contentions, Issues and Discussion

In the appellant's opening brief petitioner asserts that his mandate action was dismissed by the trial court "on the sole ground that Appellant was guilty of laches" without any evidence having been presented of either acquiescence or detrimental reliance by the city. Petitioner then proceeds to discuss only the laches question. However, petitioner's assertion as to the basis for the court's ruling and his decision to discuss only the question of laches are sadly mistaken. City's motion was made on the ground the petition was not timely filed and in support of that ground the city argued both laches and the 30-day statute of limitations prescribed in section 11523.[6] And in its order dismissing petitioner's action the court did not specify whether it did so on the basis of laches or the statute of limitations or both. If, therefore, the order of dismissal was proper on either basis, the order must be affirmed.

Happily, in the appellant's reply brief petitioner does address the statute of limitations problem. He asserts that the statute of limitations found in section 11523, which is part of the Administrative Procedures Act, is inappliable to local agency decisions and because the decisionmaking power here was vested in the City of Riverside, he was not required to file his petition for mandate within the period specified in section 11523. We conclude the city is right and petitioner is wrong on this point, that his petition for mandate is barred by section 11523 and that the order of dismissal was therefore providently made. In view of these conclusions, we do not address the laches issue.

---

[6]Section 11523 reads in part: "Judicial review may be had by filing a petition for a writ of mandate in accordance with the provisions of the Code of Civil Procedure, subject, however, to the statutes relating to the particular agency. Except as otherwise provided in this section any such petition shall be filed within 30 days after the last day on which reconsideration can be ordered. The right to petition shall not be affected by the failure to seek reconsideration before the agency."

Section 1094.6 of the Code of Civil Procedure contains a 90-day statute of limitations with respect to actions for administrative mandate to review decisions of local agencies generally, other than school districts. However, section 1094.6 is applicable to local agency decisions only if the governing board of the local agency has adopted an ordinance or resolution making section 1094.6 applicable. (Code Civ. Proc., § 1094.6, subd. (g).) The City of Riverside has not adopted such an ordinance or resolution, so section 1094.6 is not applicable to decisions of its governing body.

As indicated, section 11523 is part of the Administrative Procedures Act. There is no question but that if the decision denying petitioner's application for service-connected disability retirement is considered to have been made by the board of administration of PERS, the Administrative Procedures Act, including section 11523, is applicable. Sections 11500 and 11501 in combination expressly so provide. However, petitioner asserts the decision here was made by the City of Riverside, not PERS. We are not so certain.

■ As a technical matter, the statutory scheme appears to us to repose the legal responsibility to grant or deny an application for disability retirement in the board of administration, relegating the determination as to whether or not the employee is incapacitated for the performance of duty to the governing body of the contracting agency where a local safety member is involved. Section 21024 specifically provides that on receipt of an application with respect to a local safety member, "the board shall request the governing body of the contracting agency employing such member to make such determination [whether the member is incapacitated for the performance of duty]." Section 21025 requires the governing body of a contracting agency upon receipt of such a request from the board of administration to "certify to the board its determination under this section that the member is or is not so incapacitated." The statute does not provide or even authorize that the governing body of the contracting agency shall grant or deny the application. Indeed, the first part of section 21025 reads: "If the medical examination and other available information show to the satisfaction of the board, or in case of a local safety member the governing body of the contracting agency employing such member, *that the member is incapacitated* physically or mentally for the performance of his duties in the state service and is eligible to retire for disability, *the board* shall forthwith retire him for disability . . . ." (Italics added.)

Thus, the statutory language indicates that the only determination to be made by the governing body of the contracting agency is whether or not the safety member is incapacitated for performance of his or her duties and that the formal decision to grant or deny the application for disability retirement is to be made by the board of administration. In fact, that was the procedure originally followed in this very case back in November 1980 before issuance of the writ in the earlier mandate action between the parties (Riverside Superior Court action No. 146067). (See text accompanying fn. 4, *ante.*) In addition, the statutory interpretation we suggest comports with petitioner's allegations in the petition in the present mandate action that "[o]n October 15, 1982, Respondent, BOARD OF RETIREMENT [*sic:* Board of Administration] issued a Decision . . . denying the application of Petitioner for a service-connected disability retirement." (See fn. 5 and accompanying text, *ante.*)

If the suggested interpretation is correct, technically, the decision was by the board of administration of PERS and the petition for mandate was barred by the provisions of section 11523. However, even if the governing board of the contracting agency or its authorized representative is considered to have rendered the decision, the result is the same.

■ Petitioner is, of course, correct that generally the Administrative Procedures Act is not applicable to local agency decisions unless the local agency has adopted an ordinance, rule or regulation that it shall be bound by the act. (See, e.g., *Allen* v. *Humboldt County Board of Supervisors* (1963) 220 Cal.App.2d 877, 883 [34 Cal.Rptr. 232].) However, petitioner is incorrect in asserting the decision of the city here was made in its capacity as a local agency. ■ We agree with city that in making its determination whether or not a safety employee is incapacitated to perform his or her duties under sections 21024 and 21025, the governing body of the contracting agency or its authorized representative acts as a delegate of the board of administration of PERS within the meaning of subdivision (a) of section 11500[7] and is subject to the Administrative Procedures Act for that purpose just as is the board of administration of PERS itself when it makes the same determination with respect to nonsafety members pursuant to the same statutory authority.

Petitioner may well be correct in asserting that PERS has not itself delegated any authority to the city, although we note that the contract between PERS has not been made part of the record. We also observe that initially there was some communication between PERS and the city on account of petitioner's application for disability retirement, presumably a request by PERS that the city make the determination specified by sections 21024 and 21025. However, be that as it may, we are inclined to agree with petitioner that the delegation of authority here derives not so much from any action on the part of PERS itself but from the statute—sections 21024 and 21025. But the fact that the delegation of authority has been made statutorily rather than by an action of PERS is of no consequence. That simply means that the city performs its function of determining whether or not incapacity exists as a statutory delegate rather than a consensual delegate. It is still a delegate of PERS and in making the determination of capacity or incapacity is bound by the Administrative Procedures Act just as the board of administration.

---

[7]Subdivision (a) of section 11500 reads: " 'Agency' includes the state boards, commissions and offices enumerated in Section 11501 and those to which this chapter is made applicable by law, except that wherever the word 'agency' alone is used the power to act may be delegated by the agency and wherever the words 'agency itself' are used the power to act shall not be delegated unless the statutes relating to the particular agency authorize the delegation of the agency's power to hear and decide."

In the context of the formality required in hearings conducted by the governing body of a contracting agency, the court in *Reynolds* v. *City of San Carlos* (1981) 126 Cal.App.3d 208, 219 [178 Cal.Rptr. 636], stated: "The board of administration of PERS (and impliedly the governing body of a contracting agency) is subject to the Administrative Procedures Act (APA)." Petitioner asserts that this statement was a dictum, but we believe not. The court was called upon to determine whether substantial evidence supported the trial court's findings, and it was incumbent upon the court to establish a standard by which to evaluate the evidence.

In any event, whether a dictum or not, we agree with the statement in *Reynolds,* particularly in the context of the problems we confront. The determination of capacity or incapacity in the case of a safety member is made by the governing body of the contracting agency. The same determination as to all other members is made by the board of administration of PERS. In our view, it would be absurd and perhaps even be violative of principles of equal protection of laws to apply a different statute of limitations to petitions for administrative mandate to review substantively identical determinations just because in one case the decision was made by the governing body of the contracting agency and in the other case by the board of administration.

We conclude the petition for administrative mandate, having been filed long after expiration of the limitations period, is barred by the provisions of section 11523 and was properly dismissed.

### Disposition

The order is affirmed.

Morris, P. J., and Rickles, J., concurred.

A petition for a rehearing was denied August 13, 1985, and appellant's petition for review by the Supreme Court was denied October 23, 1985. Bird, C. J., was of the opinion that the petition should be granted.