Shari V. BARBERIC, Plaintiff,

v.

CITY OF HAWTHORNE, a
Municipality, et al.,
Defendants.

CV 85–1183 SVW(Kx).

United States District Court,
C.D. California.

Sept. 10, 1987.

Gerald M. Sato, Allred, Maroko, Goldberg & Ribakoff, Los Angeles, Cal., for plaintiff.

Richard Terzian, Adams, Duque & Hazeltine, Los Angeles, Cal., for defendants.

## MEMORANDUM OF OPINION

WILSON, District Judge.

Plaintiff Shari Barberic brought this action pursuant to 12 U.S.C. § 1983 against the City of Hawthorne (the City) and its Chief of Police, Kenneth Stonebraker, claiming that her involuntary psychological disability retirement as a police woman with the City's police department violated her due process rights under the Fourteenth Amendment to the Constitution and her right of free expression under the First Amendment.

Specifically, Barberic claims, first, that she was deprived of a protected property interest without due process because she was denied an adequate hearing prior to her involuntary retirement. Second, she claims that the stigmatizing publication of her psychological disability retirement without a prior "name clearing hearing" deprived her of a protected liberty interest without due process. Finally, plaintiff claims that defendants' decision to retire her violated her First Amendment rights because it was based upon her exercise of her constitutionally protected right of free expression.

The court finds for plaintiff on both due process claims and finds for defendants on the First Amendment claim.

## FACTUAL BACKGROUND

Plaintiff Barberic had a short (two and one-half years) but tumultuous employment as a policewoman with the City. According to Chief Stonebraker, Barberic set a department record for having ten complaints filed against her for use of excessive force in the line of duty. As a result of these incidents, five lawsuits had been filed against Barberic.

Although these complaints of violence were never substantiated, on or about March 21, 1983 Stonebraker removed Barberic as a patrol officer and assigned her to the detective desk to investigate fraud cases. Stonebraker testified that he did this because under the laws of California a police officer's personnel file is available to defense counsel in certain criminal cases for impeachment purposes and Barberic's file would make her vulnerable as a witness.

Several months after being removed from patrol duty, on August 18, 1983, Barberic without permission took over a patrol shift for another officer, her husband Dennis Barberic, and got into an altercation with an arrested suspect. As a result of this altercation, Barberic sustained injuries which required her to be off duty until October 17. Stonebraker testified that loss of work time due to injuries had been a recurring problem with Barberic.

Subsequently, on November 25, 1983, Stonebraker ordered Barberic to consult the City's retained psychologist, Dr. Robert Shomer, for psychological evaluation. Bar-

beric saw Dr. Shomer in December 1983 and January and February 1984. Dr. Shomer's report of February 6, 1984 indicated that Barberic had some problems with stress and aggression, and suggested that she be given the opportunity to seek counselling. Dr. Shomer recommended that Barberic not return to patrol duty at that time and that she be reevaluated before returning to patrol duty. Dr. Shomer's report did not contain a recommendation that Barberic be retired or otherwise removed from the police force due to psychological problems.

Meanwhile, Barberic had become very upset when she learned that Deputy District Attorney Steven Kay had decided to prosecute only misdemeanor charges against the suspect who had injured her. Barberic met with Kay and, according to Kay, stated in response to Kay's refusal to bring felony charges that "next time I'll know what to do, I'll shoot him." Kay testified that because Barberic seemed quite serious when she said this, he told her that if she was ever engaged in a shooting incident, he would remember her comment. Thereafter, against Stonebraker's orders, Barberic wrote a letter to the District Attorney's office on January 4, 1984, complaining about Kay and requesting an investigation.

According to Stonebraker, this was the "straw that broke the camel's back." On January 23, 1984, Stonebraker proffered disciplinary charges against Barberic on the grounds of insubordination and willful disobedience. On February 9, a hearing was held regarding the charges. The meeting was attended by Barberic, her attorney Richard Kreisler, Administrative Captain David Barnes, and Chief Stonebraker. Stonebraker took the matter under submission at that time.

The date of the next meeting was either February 16 or 23 (the record is unclear) but will be referred to hereafter as the February 16 meeting. On that date, the same individuals gathered to hear Stonebraker's disposition of the disciplinary charge. Stonebraker informed plaintiff that the insubordination and disciplinary

charges were sustained but that he would not impose any discipline because he had determined that Barberic was psychologically unsound. Stonebraker informed her that he was recommending that the City apply for disability retirement benefits on her behalf through the California Public Employees Retirement System ("PERS") and that she would be placed on administrative leave at full pay pending PERS' processing of the application. Barberic was then required to give up her gun and badge.

PERS is a state-wide system which local entities (called "contracting agencies") may join to provide disability retirement benefits for their employees. Cal.Government Code §§ 21020–21034 (West 1985). Although normally the PERS Board determines whether an applicant is disabled and thus eligible for retirement benefits, in the case of a "local safety member" such as a police officer, the governing body of the contracting agency is required to make that determination. Cal.Government Code § 21024 (West 1985). Here, the City, as governing body, delegated the authority to make the final determination regarding Barberic's disability retirement to its City Manager, Kenneth Jue.

There is no record of the date on which Jue made his decision, nor of the evidence on which he relied. The evidence did show, however, that Stonebraker had informed Jue a number of times during the preceding year of his difficulties with Barberic.

Barberic and her attorney unsuccessfully attempted to obtain a hearing regarding Stonebraker's decision to sustain the insubordination and disciplinary charges in accordance with the existing department regulations regarding disciplinary decisions. Barberic did not, however, request a hearing regarding Stonebraker's decision to have her retired.

On April 7, 1984, while the retirement application was still pending, Stonebraker told a local newspaper reporter, Irene Perry from the Torrance *Daily Breeze*, that the City was retiring Barberic because of psychological unfitness. This information was published in the newspaper on April 9,

1984. Barberic's retirement due to psychological disability was also noted in her personnel file.

Finally, in mid-April 1984, PERS approved the City's application and on April 14, 1984 Barberic was retired from the force. Her retirement provided her with payments approximately equal to one-half of her previous salary plus other benefits.

As a result of these events, Barberic suffered extreme emotional upset. She was unable to seek other employment for many months and received psychological treatment. In or around June 1985, Barberic obtained work as a security guard at the May Company. In February 1986, Barberic began working as a police officer with the Southern California Rapid Transit District.

## DEPRIVATION OF PROPERTY WITHOUT DUE PROCESS

### Existence of a Property Right

To prevail on her first claim for deprivation of property without due process, Barberic must first establish that she had a property right in continuing her employment as a police officer as opposed to being involuntarily retired on a disability. If she did, the City could not deprive her of her employment without due process. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Property interests are not created by the Constitution, but "are created [by] and their dimensions are defined by ... an independent source such as state law...." *Roth, id*, at 577, 92 S.Ct. at 2709. A property right can be founded on an explicit statute or on a rule, policy or understanding that supports a plaintiff's claim of entitlement to a particular benefit. *Id.*

In support of their argument that Barberic had no such right, defendants cite three cases which they contend hold that a public employee in California has no legal right to either active or retired status. *Winslow v. City of Pasadena*, 34 Cal.3d 66, 192 Cal.Rptr. 629, 665 P.2d 1 (1983); *Tielsch v. City of Anaheim*, 160 Cal. App.3d 576, 206 Cal.Rptr. 740 (1984); *Cansdale v. Board of Administration, PERS*, 59 Cal.App.3d 656, 130 Cal.Rptr. 880 (1976). The court believes that, if anything, these cases suggest that an employee may indeed have a property right in disability retirement benefits.[1] However, more importantly, the court finds these cases inapposite since the issue is not whether Barberic had a right to retirement benefits but whether she had a right to maintain her employment and not be involuntarily retired.

It is well accepted that a California police officer has a protected property right in his or her employment. This property right derives largely from Cal.Government Code § 3304(b) (West 1985) which provides that no public safety officer may be subjected to punitive action or denied a promotion on grounds other than merit without having

---

1. In *Winslow, supra,* the court did not hold that the plaintiff had no protectible right to retirement benefits. Rather, the court merely held that the city's finding that plaintiff was not disabled and was no longer eligible for retirement did not impair any right plaintiff had to retirement benefits since that finding was not based on a subsequent change in policy but was made in accordance with the rules under which he had been found disabled. In *Tielsch, supra,* the court did state that the plaintiff had no vested right to disability retirement, but merely cited *Winslow* as support for that conclusion.

In *Cansdale, supra,* plaintiff was found no longer disabled and his benefits were terminated. Plaintiff thereafter obtained an administrative hearing to contest the Board's finding. In court, plaintiff claimed that his due process rights had been violated by the absence of a hearing prior to the termination of benefits. Because plaintiff would have been entitled to full retroactive relief if his administrative appeal was successful, the court held that a predeprivation hearing would only have protected plaintiff's right to receive a stream of payments pending the appeal. The court held that this right had not been impaired because, as a state employee, plaintiff was automatically entitled to resume employment and receive a salary immediately upon the termination of retirement benefits. Cal.Gov.Code § 21029. This case suggests that the immediate termination of benefits without a prior hearing might be unconstitutional where the plaintiff is not a state employee and thus not entitled to immediate reinstatement.

the opportunity for an administrative appeal. Punitive action includes discharge and suspension. *See* Hawthorne Municipal Code subchapter 2.52.100. Subchapter 2.52.010 of the Hawthorne Municipal Code lists "physical or mental disability" as one of the "causes" that can justify punitive action. Plaintiff thus clearly would have been entitled to due process to challenge the department's action had she been discharged or demoted because of a mental disability.

The question here is whether Barberic also was entitled to due process prior to being deprived of her job by way of involuntary disability retirement, or whether those rights are limited to situations of discharge, demotion, and suspension. There is no explicit authority that Government Code § 3304(b) applies to situations of involuntary retirement due to mental disability. However, the cases suggest that Barberic did have a protectible expectation that she would be able to retain her job unless there was good cause for removal. The California courts have held that "the right of [a police officer], who has passed his probationary status, to maintain his position as a uniformed police officer until removed for good cause [is] a fundamental vested right." *Hadley v. City of Ontario*, 43 Cal.App.3d 121, 117 Cal.Rptr. 513, 517 (1974). *See also, Strumsky v. San Diego County Employees Retirement Assn.*, 11 Cal.3d 28, 34, 112 Cal.Rptr. 805, 520 P.2d 29 (1974); *Perea v. Fales*, 39 Cal.App.3d 939, 114 Cal.Rptr. 808 (1974).

The court believes that there is no significant distinction for the purpose of Constitutional analysis between forced disability retirement and discharge. In the case of both forced disability retirement and discharge, the job loss is due to some misconduct or inability to perform on the part of the employee, certain standards and criteria exist to determine whether dismissing the employee is appropriate, and correction of an erroneous evaluation of the employee's performance can result in the employee retaining his or her job. In these respects, involuntary retirement is distinguishable from those situations where an employee does not have a protected property interest, such as where the employee loses his job because the position has been entirely eliminated or because he has reached the mandatory retirement age. *See, e.g., Dwyer v. Regan*, 777 F.2d 825, 833 (2nd Cir.1985); *Black v. Payne*, 591 F.2d 83, 88 (9th Cir.1979).

Additionally, although plaintiff did receive one half of her salary and other employment benefits upon retirement, this is not a sufficient basis for distinction. Upon retirement Barberic did not retain her job, her full salary, all of her benefits, and her opportunities for advancement within the department. The cases hold that there can be a deprivation of property even where the employee is merely demoted rather than fired, *White v. County of Sacramento*, 31 Cal.3d 676, 183 Cal.Rptr. 520, 646 P.2d 191 (1982), or where a fired employee subsequently obtains other employment at a higher salary, *Bell v. Gayle*, 384 F.Supp. 1022 (N.D.Tex.1974). Clearly here, retirement and employment were not equivalent.

■ The court thus concludes that there is no good reason to deny plaintiff the right to challenge the department's findings of mental disability and to defend her job simply because she was deprived of her position as a police officer by way of a mechanism other than discharge. Based on the existing law holding that a nonprobationary police officer has a property interest in maintaining her job in the absence of good cause, the court finds that this property interest can be impaired by way of involuntary disability retirement as well as by discharge and other punitive action.

### Availability of a Due Process Hearing

■ The amount of process that is due when a property interest is impaired is determined by balancing the employee's private interest in retaining her employment, the governmental interest in the expeditious removal of unsatisfactory employees and the avoidance of administrative burdens, and the risk of erroneous termination. *Loudermill, supra*, 470 U.S. at 542–43, 105 S.Ct. at 1494, *Mathews v. El-*

*dridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 33 (1976).

In *Loudermill,* the Supreme Court reaffirmed the general rule that a pre-termination hearing of some kind is required before depriving a public employee of his or her job. *See also, Vanelli v. Reynolds School District No. 7,* 667 F.2d 773 (9th Cir.1982). The Court emphasized that the employee's interest in avoiding an improper discharge is of extreme importance and is not outweighed by the government's interest. The Court further held that even where there is a significant hazard in keeping an employee on the job, that risk can be alleviated by merely suspending the employee without pay, thus suggesting that even such perceived dangers would not obviate the importance of a pretermination hearing.

The court believes that the relevant interests of plaintiff and defendants in this case are nearly identical to those of employers and employees as described by the Court in *Loudermill.* Thus, the same due process requirements must apply.

■ While due process does not require a full scale adversary hearing in all situations, at a minimum the employee must be given notice of the charges against him, an explanation of the employer's evidence, and a meaningful opportunity to respond and present his side of the story. *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495; *Vanelli,* 667 F.2d at 778.

■ Here, Barberic came to the February 16 meeting reasonably expecting that the only subject of discussion would be Stonebraker's decision regarding the insubordination charge against her. She had no prior notice that her mental stability was going to be a subject of discussion or that Chief Stonebraker was considering having her retired for psychological disability. At the meeting, Barberic was not informed of the evidence on which Stonebraker had re-

lied in deciding to recommend her retirement and she did not even receive a copy of Dr. Shomer's psychological report. Accordingly, the court is fully convinced that the February 16 meeting cannot be considered a pre-retirement hearing meeting the standards of due process.

*Waiver*

The issue then is whether Barberic was given some other opportunity to respond to the charges against her prior to the property deprivation, and if so, whether she waived her due process rights by failing to take advantage of that opportunity.

Barberic's property deprivation occured on April 15, 1984 when she stopped receiving her full salary as a police officer and officially became retired from the force. *See Bignall v. North Idaho College,* 538 F.2d 243, 246 (9th Cir.1976). The evidence shows that there was no preexisting policy of or procedure for providing a hearing to oppose an involuntary retirement. However, Stonebraker testified at trial that had Barberic asked for a hearing, he would have granted her request.

Barberic argues that Stonebraker had her involuntarily retired instead of discharged in order to remove her from the force without having to hold a hearing. While the court agrees that Stonebraker's conduct was suspicious, there is no sufficient basis to find that a hearing would not have been granted had plaintiff so requested. Thus, for the purpose of analysis, the court will assume that a hearing was available on request.[2]

Courts have indeed held that a due process right to a hearing, like any constitutional right, can be waived, and that the failure to take advantage of available procedures can constitute such a waiver. *See, e.g., Bignall, supra; Correa v. Nampa School District,* 645 F.2d 814 (9th Cir. 1981). However, the Supreme Court has

---

**2.** The court does have some doubt as to whether Chief Stonebraker's subjective intent to grant plaintiff a hearing, without more, is sufficient to constitute a "meaningful opportunity" to respond, particularly because such a non-expressed intention could not provide adequate

notice of the availability of a hearing. However, resolution of this issue is not necessary because the court has determined *infra* that Barberic did not waive the opportunity that supposedly was available to her.

held that a waiver of a constitutional right must be voluntary and knowing, and that there is a strong presumption against finding that a right was waived. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

The requirement that there be a knowing waiver has been applied numerous times in cases involving the alleged waiver of a pre-termination hearing. *Correa, supra; Fuller v. Laurens County School District No. 56*, 563 F.2d 137 (4th Cir.1977); *Suckle v. Madison General Hospital*, 499 F.2d 1364 (7th Cir.1974); *McCullough v. Board of Trustees of the North Panola Consolidated School District*, 424 F.Supp. 616, 619 (N.D.Miss.1976): "It can hardly be disputed that a constitutional right to a procedural due process hearing may be waived *providing the right is recognized by the party* and there is an intentional waiver thereof" (emphasis added). *Cf. Dwyer v. Regan*, 777 F.2d 825 (2d Cir.1985).

The same requirement has also been applied in due process hearing cases not involving employment rights. *See, Field v. Boyle*, 503 F.2d 774 (7th Cir.1974); *Craig v. Franke*, 478 F.Supp. 19 (E.D.Wisc.1979).

Because waiver is a defense, defendants have the burden of proving the existence of a knowing waiver. The court finds that defendants failed to prove that Barberic knew or had reason to know that she could have had a pre-retirement hearing upon request.

The court finds based on the evidence at trial that at the February 16 meeting, Chief Stonebraker informed Barberic of his decision to recommend her retirement as if that decision were a *fait accompli*. Barberic was given no reason to believe that any further decision-making steps remained open with respect to her retirement. Rather, the clear implication was that Stonebraker's decision was final and that all that remained was for PERS to process the application.

Additionally, as noted, there were no preexisting procedures, either set forth in an employee manual or commonly known within the department, for challenging an involuntary retirement, and there is no evidence that anyone believed that the appeal procedure applicable for discharge and discipline was available for involuntary retirement as well.

Thus, Barberic reasonably need not have conjectured that a hearing was available. *See, Ostlund v. Bobb*, 825 F.2d 1371 (9th Cir.1987).

Defendants argue strenuously that Barberic must have actually known about the availability of a hearing since she was represented by experienced counsel. Alternatively, defendants argue that even if Barberic personally did not know of her due process rights, her counsels' failure to act can constitute an effective waiver on her behalf.

With respect to this latter argument, defendants cite the opinions in *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) and *U.S. v. O'Looney*, 544 F.2d 385, 392 (9th Cir.1976) for the proposition that once an employee is represented by counsel, she does not need to actually know of her due process rights in order to waive them. These cases do not apply here because both involved the waiver of a tactical right. The courts in *Estelle* and *O'Looney* distinguished their cases from *Johnson v. Zerbst* by stating that where a question of trial tactic, rather than a fundamental right, was involved, counsel may waive that right on behalf of his client even though the right was of constitutional origin. *See also, U.S. ex rel. Payton v. Rundle*, 472 F.2d 36 (3rd Cir.1972): where a fundamental right conferred by the Constitution is involved, the strict waiver standard of *Johnson v. Zerbst* must apply.

Here, the right allegedly waived by counsel on behalf of Barberic could not be considered a tactical one. Rather, the right to notice and a hearing is the most fundamental aspect of procedural due process. In applying the strict requirement of a knowing waiver, the cases cited above implicitly and explicitly recognized the fundamental nature of an employee's right to a pretermination hearing. Thus, defendants must bear the burden of showing that Barberic actually knew of her due process rights.

In this regard, there is evidence that Barberic's former counsel, Kreisler, told Barberic that if she wanted to oppose the retirement he would not represent her so she should get other counsel and "act quickly." There is also evidence that subsequent counsel, the Allred firm, was retained by Barberic to oppose her retirement and that they obtained a report from a consulting psychiatrist, possibly for that purpose.[3]

While defendants can attempt to establish Barberic's knowledge through this circumstantial evidence, in this case it would be wholly speculative to find that Barberic had actual knowledge of the availability of a hearing or any other means to oppose her retirement. There is absolutely no evidence in the record that any attorney Barberic consulted knew that she could get a hearing in the department prior to retirement or, more specifically, knew of Stonebraker's unexpressed intent to grant Barberic a hearing if she so requested. More importantly, there is no evidence in the record that any attorney told Barberic that she could obtain a hearing or have some opportunity to oppose retirement. Since there is insufficient evidence to show that Barberic actually knew of any available opportunity for pre-retirement due process, the court must find that defendants have failed to meet their burden of proving that Barberic waived her constitutional due process rights.

It might be argued that, in light of attorney Kreisler's admonition, Barberic should have inquired of Stonebraker as to the availability of a hearing or taken some action to forestall her retirement. However, the court is aware of no authority which places the burden on the employee to make an initial inquiry as to possible review procedures where the employer itself failed to give the employee even the most rudimentary form of notice of her rights and options. Rather, the courts have consistently held that the requirements of due process impose on the government the burden of providing adequate notice.

In sum, the court finds that an employee cannot be held to have waived her "opportunity" for a hearing where that opportunity was effectively non-existent. If an employee's rights are not publicized in some routine manner, the employee should be informed personally by the employer. To allow an employer to protect itself by depriving employees of the information necessary to protect their rights would offend the purpose of the Fourteenth Amendment.

### Effect of Post-Deprivation Remedies

Defendants next argue that even if no pre-retirement hearing was available, Barberic's failure to avail herself of post-retirement remedies constituted a waiver of her due process rights.

The court rejects this argument. The Supreme Court's decision in *Loudermill* clearly requires a hearing before a job termination in order to satisfy the requirements of due process. Where a meaningful pre-deprivation hearing is practicable, post-deprivation remedies do not provide due process. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265, 278 (1982). Once an employee is terminated without the process he is due, the constitutional deprivation is complete. *Schultz v. Baumgart*, 738 F.2d 231, 237–8 (7th Cir.1984). Thus the availability of post-deprivation procedures cannot "cure" the due process violation.

Defendants also contend that even if Barberic was denied due process, she would not be entitled to any damages flowing from that deprivation subsequent to the date she could have obtained a post-retirement review. Defendants suggest that Barberic could have obtained full relief either by applying for reinstatement through PERS pursuant to Government Code section 21028 or by petitioning for a writ of mandamus. The court finds that neither of these was a viable remedy in this case.

---

**3.** The court thinks this latter fact is curious and wonders why the Allred firm obtained the psychiatric report if not to seek a review. However, the court refuses to speculate and will not base its opinion on mere possibilities.

■ The PERS reinstatement procedure could not have made plaintiff whole upon a finding of non-disability. The statute does not provide for automatic reinstatement if an individual is found to be no longer disabled, unless he or she is a state employee. Cal.Gov.Code § 21029 (West 1985). Thus, Barberic's chance for reinstatement would depend upon the policies and practices of the Hawthorne Police Department and Chief Stonebraker. Further, even if Barberic was reinstated, the PERS procedure could not have compensated Barberic for the wages and benefits she would have lost during the period of her retirement.

■ Administrative mandamus permits a court to review the orders and decisions of an administrative agency, board or inferior tribunal when that decision is the the result of a legally-mandated hearing. Cal.Code Civ.Proc. § 1094.5 (West 1985). This court cannot assume that a Superior Court would have found that Barberic's case met the requirements for mandamus since there was no clear legal requirement providing for a *pre* -retirement hearing at that time. Additionally, the reviewing court could not have granted mandamus here because the City's decision was reached without issuing findings of fact or following administrative procedures facilitating the court's review. *Hadley v. City of Ontario*, 43 Cal.App.3d 121, 128, 117 Cal.Rptr. 513, 518 (1974); *Shuffer v. Board of Trustees*, 67 Cal. App.3d 208, 136 Cal.Rptr. 527 (1977). Finally, even if a court could have reviewed the retirement decision in this case, the court's review would not have been *de novo*. *Hadley, supra*. Thus, administrative mandamus was not a remedy that could have provided full relief from Barberic's due process violation.

■ Traditional mandamus permits a court to compel public officers, boards, and agencies to perform an act *which the law* specifically requires them to perform. Cal. Code Civ.Proc. § 1085 (West 1985). The requirements for mandamus are: (1) a clear, present, and usually ministerial duty on the part of the respondent, and (2) a clear, present, and beneficial right in the petitioner to the performance of that duty. *Duff v. City of Gardena*, 108 Cal.App.3d 930, 167 Cal.Rptr. 4 (1980); 5 Witkin, *Cal. Procedure*, (2d ed. 1971).

For Barberic to have obtained a writ of mandamus, she would have had to prove to the Superior Court that she had a clear and present right to some kind of hearing regarding her disability retirement.

Although this court has decided that Barberic was entitled to some form of due process, at the time of Barberic's retirement there was no unambiguous authority that the City of Hawthorne or PERS had a clear and present obligation to conduct a hearing in a situation such as Barberic's.[4] Without such authority, the court cannot presume that a Superior Court would have granted a petition for writ of mandamus. Moreover, even if the court were to presume that a writ would have issued, the court cannot speculate whether the hearing ordered by the Superior Court would have complied with the requirements of due process. Thus, the court cannot find that Barberic could have obtained full relief by seeking a writ of mandamus.

More importantly, the court cannot believe, and is aware of no authority, that a plaintiff who has been denied a due process hearing must in all instances seek a writ of mandamus compelling a hearing in order to preserve his claim and right to damages.

**4.** In support of its argument, defendants cite *Garner v. City of Riverside*, 170 Cal.App.3d 510, 216 Cal.Rptr. 486 (1985), where the plaintiff in a prior proceeding received a writ of mandamus directing a hearing regarding his disability retirement. However, the court's opinion did not indicate the facts under which the writ was granted (e.g. Garner's employer may have had an existing internal review procedure) and did not address the propriety of that order.

Additionally, the court notes that the California Administrative Procedure Act, Cal.Gov.Code §§ 11370 et seq., applies to PERS and two cases have held the requirements of that Act applicable to police departments when they render decisions as delegates of PERS. *Garner, supra; Reynolds v. City of San Carlos*, 126 Cal.App.3d 208, 178 Cal.Rptr. 636 (1981). However, the court is not aware of any routine or required hearing procedures conducted by PERS nor of any authority that the APA mandates a hearing by PERS in all instances.

If this were true, cases discussing a plaintiff's failure to seek such extraordinary relief before resorting to federal court would be too numerous to mention. Rather, the authorities are clear that a § 1983 plaintiff does not have to exhaust state remedies. *Patsy v. Board of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172, 188 (1982). Because a writ of mandamus is an extraordinary remedy and is not issued as a matter of course, the failure to seek a writ should no more cut off damages than should a plaintiff's failure to seek a preliminary injunction bar damages that accrued after the injunction might have issued.

### Defendants' Affirmative Defense

Finally, defendants assert as a defense that Barberic would have been involuntarily retired even if she had received a hearing comporting with the requirements of due process. The defendant has the burden of proof on this issue. *Alexander v. City of Menlo Park,* 787 F.2d 1371, 1375 (9th Cir.1986); *Patkus v. Sangamon-Cass Consortium,* 769 F.2d 1251, 1265 (7th Cir. 1985).

■■■ The court finds that defendants cannot meet their burden. Based on the evidence presented at trial, the court is of the opinion that Stonebraker's decision to retire Barberic was prompted by the insubordination charge, that there was no substantial evidence that Barberic was disabled prior to the February 16 meeting, and that a hearing would not have resulted in Barberic's retirement for psychological disability. With respect to these conclusions, the court found it particularly significant that the City's own consulting psychologist, Dr. Shomer, did not recommend that Barberic be retired for psychological reasons but merely suggested that she obtain counselling and that she should be reevaluated before returning to patrol duty.

### Damages

Accordingly, the court finds that plaintiff was deprived of property without due process of law. Barberic is entitled to damages in the amount of lost wages from the date of the deprivation, April 15, 1984, to the date of this judgement, less amounts she earned or could have earned in mitigation. According to plaintiff's proof, this calculation would consist of plaintiff's salary of $2,425.50 per month as a police officer, less approximately $900.00 per month from June 1985 to February, 1986 while Barberic was employed at May Co. and less plaintiff's current salary at RTD of $2,200.00 per month from February 1986 to the present.

■■ The court finds that plaintiff's damages should be reduced by the amount of the PERS disability benefits she received. PERS benefits are partially funded by the employer's contributions. *See* Cal. Gov.Code §§ 20740–20760. Thus, since the payments Barberic received were not from a source "wholly independent" from defendants, such payments do not fall within the collateral source rule. *Helfend v. Southern California Rapid Transit District,* 2 Cal.3d 1, 84 Cal.Rptr. 173, 465 P.2d 61 (1970).

Finally, plaintiff is entitled to damages for emotional distress as a result of her retirement and the deprivation of due process as set forth in the following section.

## DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS

Barberic also claims that she was deprived of liberty without due process when defendants publicly disclosed that Barberic was being retired from employment because of psychological unfitness without first giving her an opportunity to contest the accusation and clear her name.

It is well accepted that a person's constitutionally protected liberty interest is implicated when the state imposes on him or her a stigma that jeopardizes his "good name, reputation, honor or integrity," "might seriously damage his standing or associations in his community," or forecloses his freedom to take advantage of other employment opportunities. *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548, 558 (1972); *Vanelli v. Reynolds School District No. 7,* 667 F.2d 773, 777 (9th Cir.1982).

There is ample support in the cases that Defendants' declaration that Barberic was psychologically disabled or unfit imposed the kind of stigma that might damage her reputation or standing in the community or foreclose future employment opportunities. *Lombard v. Board Of Education,* 502 F.2d 631, 637 (2d Cir.1974); *Stewart v. Pearce,* 484 F.2d 1031 (9th Cir.1973); *Lenihan v. The City of New York,* 636 F.Supp. 998, 1018 (S.D.N.Y.1985); *Bomhoff v. White,* 526 F.Supp. 488 (D.Ariz.1981); *Laurido v. Simon,* 489 F.Supp. 1169, 1177 (S.D.N.Y. 1980). In *Pearce,* for example, the Ninth Circuit found that an employer's order that the plaintiff submit to a psychological examination implied that plaintiff was mentally unfit for the job, thereby creating a "stigma, an official branding." 484 F.2d at 1034. In *Lenihan* and *Laurido,* the courts found that the placing of an employee on involuntary retirement or leave of absence, respectively, due to mental unfitness implicated the plaintiff's liberty interests.

The Ninth Circuit has stated that where a stigmatizing charge is made, "[t]he procedural protections of due process apply if the accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in connection with the termination of employment or the alteration of some right or status recognized by state law." *Vanelli, supra,* 667 F.2d at 777–778.

■■■ Here, all three factors were satisfied. Barberic contested the accuracy of Stonebraker's determination that she was psychologically disabled at the February 16 meeting. Stonebraker told a reporter from a local newspaper that Barberic was being retired for psychological unfitness, and this information was published in the newspaper shortly thereafter. Finally, the charge was made in connection with the termination of Barberic's employment.

The Supreme Court has held that when a stigmatizing charge is made, "due process would accord an opportunity to refute the charge. . . . notice and an opportunity to be heard are essential." *Roth, supra,* 408 U.S. at 573, 92 S.Ct. at 2707. The Ninth Circuit in *Vanelli* stated that there is "a strong presumption" that an employee is entitled to this notice and opportunity to be heard *prior* to the liberty deprivation, although a balancing of the factors ennunciated in *Mathews v. Eldridge* is necessary to determine what is necessary to comport with due process under the particular circumstances of the case. *Vanelli, supra,* 667 F.2d at 778.

In this case, as in *Vanelli,* a pre-deprivation hearing was necessary. The court does not believe that providing prior notice and some form of a hearing would present an undue administrative burden. However, the damage that could result from an inaccurate newspaper article such as the one published in this case could be devastating and not easily be cured by a later retraction.

Here, the only possible opportunity Barberic had to refute Stonebraker's charge that she was mentally unfit was at the February 16 meeting. However, as previously discussed, the February 16 meeting fell far short of the standards of due process. There is no evidence that Barberic had notice or an opportunity to respond to Stonebraker's charge thereafter. Accordingly, the court finds that the defendants' public dissemination of their charge that Barberic was psychologically disabled without providing Barberic with prior notice of the publication and a meaningful opportunity to refute the charge constituted a deprivation of her protected liberty interests without due process.

The court found Barberic's testimony credible with respect to the emotional distress she suffered as a result of her involuntary retirement and the stigmatizing publication. For some time, Barberic was extremely upset and was even reluctant to leave her home. Barberic sought psychological counseling and was unable to work for some time. The court has concluded that Barberic suffered emotional damages in the amount of $25,000.00, half of which was attributable to the property deprivation and half to the liberty deprivation.

## FREE EXPRESSION

Barberic's final claim is that Defendants' decision to involuntarily retire her violated

her First Amendment rights of free expression. Barberic contends that Stonebraker decided to have her retired because she sent a grievance letter to the District Attorney's office complaining about Deputy District Attorney Kay's handling of a particular case in which she was involved, without submitting the letter to Stonebraker for prior approval as he had requested and as department regulations required. Barberic asserts that Stonebraker's requirement constituted a prior restraint on protected speech that was unjustified under the circumstances and that she could therefore not be penalized for her conduct.

In delineating the First Amendment rights of public employees, the Supreme Court has held that if disciplinary action is taken against an employee because of statements made by that employee regarding matters of public concern, the court must strike "a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708, 717 (1983) (quoting *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–1735, 20 L.Ed.2d 811, 817 (1968)). The Court noted that the government must have wide discretion and control over personnel management and internal affairs, although this need may be insufficient to justify restraint on speech where the subject matter is of great public concern. *Connick, supra*, 461 U.S. at 151, 103 S.Ct. at 1692.

Here, to begin with, the court does find that Barberic's conduct in sending the grievance letter did prompt Stonebraker to institute the retirement proceedings. However, the evidence showed that Stonebraker's objection to Barberic's conduct was not due to the specific issues raised in the grievance letter. Rather, he considered her insubordinate for failing to obtain his approval before sending the letter.

Thus, the issue before the court is whether a complaint by a police officer that the District Attorney's office is not prosecuting its cases properly involves a matter of public concern, and if so, whether the interests of the Hawthorne Police Department in conducting its affairs effectively and efficiently justified defendants' conduct.

The court holds that, even assuming the letter did address a matter of public concern, the defendants' requirement of prior review was justified. Clearly, the police department has a strong interest in maintaining harmonious relations with the District Attorney's office so that both can work more effectively and efficiently. Regulation of police officers' interactions with the District Attorney aids in minimizing unnecessary conflict, promoting trust and cooperation, and assuring that police department policies *in this regard* are consistent.

Society also has an interest in keeping separate its law enforcement and prosecutorial agencies. Allowing a police department to regulate police officers' attempts to influence prosecutorial discretion and decision-making furthers this interest.

Accordingly, the court finds that the governmental interests involved and the context in which the events occurred justified defendants' interference with Barberic's right of free expression. Thus, defendants are entitled to judgment on this claim.

### LIABILITY OF STONEBRAKER

Barberic seeks to hold Chief Stonebraker personally liable on all claims and seeks punitive damages in connection therewith. In defense, Stonebraker contends that he is entitled to qualified immunity.

"Government officials performing discretionary functions generally are shielded from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.... If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Even if

the law is clearly established, an official may be immune if he can prove "extraordinary circumstances" showing that he "neither knew nor should have known the relevant legal standard." *Id.* at 819, 102 S.Ct. at 2738.

 The court finds that Stonebraker is entitled to immunity with respect to the property due process claim since it was never previously established that a police officer has a property right in his job that is impaired by an involuntary retirement.

With respect to the liberty claim, the law has been clearly established that public employees are entitled to notice and an opportunity to contest a stigmatizing publication. Further, there is ample authority that a declaration of psychological unfitness is stigmatizing. Thus, Stonebraker should have known that it was improper for him to release the information regarding Barberic's psychological disability retirement to the press without at least notifying Barberic and giving her an opportunity to respond.

Stonebraker asserts that he had no reason to believe that the publication was stigmatizing under existing law because technically Barberic was being retired for a "stress disability" which most police officers did not oppose because of the lucrative benefits. However, Stonebraker had no reason to presume that Barberic would not object to wide public dissemination of the news of her retirement and the reasons therefore.[5] Stonebraker also contends that he had no reason to think he had to notify Barberic of her rights because she was represented by counsel. However, it is irrelevant that plaintiff had counsel in light of the fact that neither Barberic nor her lawyer had notice of Stonebraker's conversation with the newspaper reporter until the story was printed and disseminated.

Thus, Stonebraker cannot claim immunity with respect to Barberic's liberty claim, and is jointly liable for all damages awarded for emotional distress.

Finally, the court finds that there is no basis for an award of punitive damages against Stonebraker with respect to the liberty violation.

Plaintiff is ordered to prepare and submit to the court forthwith a proposed judgment in conformity with this order.

IT IS SO ORDERED.

---

**5.** In fact, Stonebraker was well aware that Barberic vehemently disputed his charge and felt very strongly about preserving her status as a police officer.